IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANDRA MARSHALL )<br><br>        Plaintiff )<br><br>v. )<br><br>HONEYWELL TECHNOLOGY )<br><br>SYSTEMS INC. ET.AL )<br>        )<br>        )<br>        Defendants. ) | Case No. 1:05CV02502<br><br>Judge Richard W. Roberts |

## <u>CORRECTED AMENDED COMPLAINT</u>

(Employment Discrimination, Racial and Sexual Harassment, Hostile Work
Environment, Retaliation, Civil Rights-Fifth & Eighth Amendment-42 U.S.C. § 1981,
Negligent Supervision, Negligent Retention, Intentional Infliction of emotional Distress
and violations under the Equal Pay Act )

### I. INTRODUCTION

Plaintiff Sandra Marshall by and through the undersigned Counsel hereby
files this Second Amended Complaint for claims of employment discrimination, racial
and sexual harassment, hostile work environment, violations under the Fifth and Eighth
Amendments to the United States Constitution, retaliation, negligent supervision,
negligent retention, intentional emotional distress and violations under the Equal Pay Act.
Plaintiff incorporates by reference all previous allegations as alleged in her original and
Amended complaints as if fully setforth herein.

1.      This proceeding is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1871,42 U.S.C. § 198, § 1985 (3) and Executive Order 11246, for redress of injuries due to the defendants pattern and practice of racial and sexual discrimination, harassment, hostile work environment, retaliation and other acts committed by the defendants against African American and female employees. This action is to address the defendants' pattern and practice of retaliation against African American and female employees who oppose or complain of unlawful employment practices. These violations are systemic in nature, and constitute a pattern and practice of conduct which for many years has permeated, and continues to permeate, Honeywell, L3 and SGT. Accordingly, plaintiff seeks declaratory, equitable, punitive and monetary relief.

Plaintiff also files this complaint for injunctive relief and damages to redress the deprivation of rights secured to the Plaintiff by the common law and by Section 7 (b), 29 U.S.C. § 626 (b), of the Age Discrimination in employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"), which incorporates by reference Section 16 (b), 29 U.S.C. § 216 (b), of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* and the Prince George's County Code §§2-200,2-209,2-222,1-185,1-186 and Md. Code Ann., Article 49 B§ 42 1957, as amended by Acts 1997. c.348, §l eff. Oct 1. 1997) and the Equal Pay Act

## H.    JURISDICTION

2.      The jurisdiction of the Court over this controversy is based upon the following:

(a)    The Court's jurisdiction is conferred by 28 U.S.C. § 1332, as the matter in controversy exceeds, exclusive of interest and costs, the sum of value of Fifty Thousand Dollars ($50,000.00) and the parties are diverse;

(b)    Jurisdiction exists in this case pursuant to the Fifth and Eighth Amendments to the Constitution and under 42. U.S.C. Section 1981, 1985, and 28 U.S.C. §1331 and 28 U.S.C. §1343

(c)    The Court's jurisdiction is conferred by 28 U.S.C. § 1337 to enforce the provisions of the ADEA and all federal laws; and

(d)    The Court's pendent jurisdiction to redress the unlawful and tortuous conduct described herein to include intentional infliction of emotional distress, negligent supervision and negligent retention.

### III.    VENUE

3.    The venue of this Court over this controversy is based upon the following:

(a)    Plaintiff avers that the defendants Honeywell, L-3 Communication System and SGT Inc. are corporations doing business in this judicial district within the meaning of 28 U.S.C. §1391 (c).

(b)    Plaintiff resides in the District of Columbia.

(d)    The government entity NASA for whom the parties worked as contractors resides and has a principal office and does business in the District of Columbia.

## IV.    PARTIES

4.        The Plaintiff, Sandra Marshall is a former employee of the defendants Honeywell, and L-3 Communications Government Services, Inc. She was born on December 12, 1949 and is a 57 year old African American woman. At all times relevant to the allegations herein, Plaintiff was a citizen of the United States. She is a resident of the District of Columbia. Plaintiff was employed as Voice Control Supervisor for federal government contractor Honeywell and subcontractor L-3, Communications Government Services, Inc. at the time of her discharge on December 31,2003. She was also denied employment and the right to make and enforce any contracts with defendants in 2003 on orders from Honeywell.

5.        Defendant Honeywell Technology Systems ("Honeywell) is a corporation organized under the laws of Delaware. Defendant transacts business and performs services in the District of Columbia. At all times relevant to this Civil action, defendant Honeywell was the employer or former employer of the Plaintiff.

6.        Defendant L-3 Communications Systems (hereinafter "L-3"and L-3 merged with EER Systems Inc. in 2003) is a corporation organized under the laws of the State of New York. Defendant transacts and does business in the District of Columbia. At all times relevant to this civil action, defendant L-3 was the employer and/or former employer of the Plaintiff in 2003.

7.    Defendant SGT Inc. became the sub-contractor under Honeywell in 2003 to provide employment services for NASA. SGT is a Maryland corporation organized under the State of Maryland. SGT does business in Washington, D.C. SGT denied the Plaintiff employment and refused to allow her to make or form a contract with it for employment.

8.    Defendants Honeywell, L-3 and SGT engage in an industry affecting commerce, as defined in Section 11 (h) of the ADEA, 29 U.S.C. § 630 (h). Defendants employed twenty-five (25) or more employees at all times relevant to this action Section 11 (b) of the ADEA, 29 U.S.C. § 630 (b).

## V.    EXHAUSTION OF ADMEVSITRATTVE REMEDIES

9.    Prior to filing this civil action, Plaintiff timely filed a written charge of race, sex, age discrimination with the Prince George's Human Relations Commission ("PGCHRC") and the Equal Employment Opportunity Commission ("EEOC"). The EEOC failed to effect voluntary compliance with the requirements of the ADEA through conciliation and persuasion.

10.    The Plaintiff has filed this action subsequent to the expiration of sixty (60) days from the filing of a charge of age discrimination with the PGHRC and the EEOC and less than two years after the defendants willfully violated Plaintiffs rights under the ADEA.

11.    On or about July 1, 2006, Plaintiff requested a Right To Sue Letter from the Equal Employment Opportunity Commission (EEOC). A Right To Sue Letter was issued by the EEOC but was sent to the wrong address for Plaintiff, although Plaintiff provided the Prince George's Human Relations Commission with a timely Change of Address for 6939 Georgia Avenue, N.W. Apt 518, Washington, D.C. 20012. Exhibit 1.

Subsequently, on October 24, 2006, the Baltimore EEOC Office acknowledged in writing that it had sent Plaintiffs three (3) "Right To Sue Letters" pertaining to the defendants in this matter to the wrong address along with a letter advising plaintiff that she now had 90 days from receipt of the EEOC's October 25, 2006, letter and notices in which to file her federal claims in the United States District Court. See Exhibit 1. Plaintiff received her "Right to Sue Letters" on or about October 27, 2006. Plaintiff is filing this Amended Complaint on January 2, 2007, less than 90 days after receiving her "Right To Sue Letters".

## VL    FACTUAL BACKGROUND

11.    In 2003 Mrs. Sandra Marshall an African American female was 54 years of age with over 25 years of employment as a contractor with NASA. She was one of the most senior and tenured contracting employees at the Greenbelt, Maryland NASA work site while working for defendants Honeywell and L-3.

12.    In the 25 years that Mrs. Marshall had worked as a contractor at NASA she was always hired by each new contractor who came aboard

13.    Specifically in or about 1999 Marshall was working as a contractor under Lockheed Martin. Defendant Honeywell was working under Lockheed Martin as a subcontractor.

14.     In 1999 a company by the name of EER Systems Inc. (hereinafter referred to as EER. EER was later merged with and has become L-3) was hired by Lockheed Martin as a minority firm under its contract. Subsequently Honeywell won the NASA Contract from Lockheed Martin and hired EER as s subcontractor. Marshall was hired by EER as a contractor in 1999 in the position of Engineering technician III.

15.     In 2000 defendant EER (A.K.A. L-3) had a vacant management position, namely, Voice Controller Supervisor. Marshall was the only person who applied for the position. Only after Marshall kept pushing to be promoted in the position did defendants Honeywell and EER reluctantly promote Marshall to the management position on January 17, 2000.

16.     In January of 2000 Marshall became the first African American (Black) female supervisor for the defendants Honeywell and EER (A.K.A. L-3) in her department.

17.     However, immediately after Marshall was promoted in her management position she began noticing that she was being treated differently than the white and male managers by her white male Supervisor, Mike Eder who was a white male. Marshall's Supervisor supervised approximately 29 employees. She was the only Black and female supervisor under her white male Supervisor, Mr. Eder.

17a. From the outset of Marshall's promotion as a manager she was constantly subjected to racial, sexual and age discrimination slurs by defendants' Honeywell and L-3's managers and employees. Marshall was also subjected to derogatory racial, sexual and/or age comments by defendants' managers and/or subordinate employees.

17b.   Marshall was further subjected to relentless and blatant racial and sexual harassment which she endured on a daily basis. Plaintiff was constantly negatively referred to or about being a woman. Specifically, she was told by defendants that she like most women were emotional, that she could not or was unable to make decisions, like whites or men without getting upset and floundering. Additionally, Marshall was told by defendants' managers and male employees that women could not think, control themselves, that she was too picky and just did not understand things in general.

18.     Specifically, Marshall was not being allowed by defendants to ask questions or voice her opinion in meetings as the white male managers were. In January of 2001 Marshall was being excluded from management meetings by defendants, and defendants continuously withheld information from her. Marshall learned after she was terminated she was never paid the same or comparable wages and salary as the whites and/or male supervisors for doing the same, similar and/or identical work. She was also not paid the same salary as the white female that had the position before she had the position.

19.     Marshall from 2001-2002 was also not allowed by defendants to discipline nor supervise any white or male employees.

19a.   Marshall was subjected to blatant racial and sexual harassment and discrimination that was outrageous. As a result of the conduct described in this complaint by the defendants Marshall suffered extreme humiliation, mental; anguish and embarrassment. Moreover, the injuries she suffered at the hands of defendants was condoned by defendants' managers and administrators who knew of what was taking pace and refused to prevent or stop the indecent and discriminatory treatment Marshall was subjected to.

19b.   At all times relevant defendants to this action had in effect and were responsible for adhering to their policies and procedures and those followed by the federal government as defendants were all government contractors and could not discriminate against Marshall based on her race or sex.

20.    In April of 2001 Marshall complained about unfair and discriminatory treatment by her white male supervisors and others. Marshall first made an internal Title VII Complaint to the CEO of EER (A.K.A. L-3) and was retaliated against by EER and her white male supervisors after she complained.

21.    Specifically, after Marshall filed her internal Title VII Complaint against her supervisor, EER permitted Marshall's white male supervisor to change her job description and take away her critical job duties and authority, lower her job performance appraisal and, deny her access to employees' files and instituted restrictions against Marshall causing her not to be able to do her job. Marshall was also denied privileges, equal and fair pay, bonuses and other benefits that white and male managers enjoyed by the defendants. These acts by Honeywell and EER caused Marshall great humiliation and degradation in the workplace.

22.    Additionally, Marshall's supervisor encouraged and condoned white and male employees' actions of making false complaints in order to give the false appearance that Marshall was not easy to get along with because the whites and males did not want to be supervised by a woman and/or a black person.

23.    In 2002-2003, Defendants Honeywell and EER (A.K.A. L-3) allowed Marshall's subordinate white males to dictate what Marshall's job duties would be, something that defendants did not do to their white and male supervisors.

24.     Defendants Honeywell and EER (A.K.A. L-3) also on a consistent basis refused to support Marshall when she attempted to discipline white or male employees and when these same employees complained about Marshall defendants accepted outright any complaint lodged against Marshall without question, something it did not do to whites and male managers.

25.     Marshall's supervisors also participated, condoned and supported her white and male subordinates who were union members against her, something they did not do to white male supervisors who had union members to complain or file grievances against them especially when the employees complaining were women or Black.

26.     Marshall also as a manager for the defendants Honeywell and L-3 complained to defendants that Black employees were not being treated differently than the whites when they took the Voice Control Operator Test. Specifically, Marshall observed that whites who failed the test were allowed to pass the test, while Blacks who passed the test were told to retake the test. Marshall advocated for the rights of Blacks and spoke up on behalf of Blacks being discriminated against and was retaliated against by Honeywell, EER and SGT.

Marshall observed and complained to Honeywell and EER that they unduly and discriminatorily subjected Black employees to harsher and more stringent test requirements than white employees. After Marshall complained, Defendants made it a requirement that a white person had to be present when Blacks took the Voice Control Operator test. Marshall also observed that Defendants questioned the favorable test results of Black employees but not of white employees but allowed white employees to pass the test even when they had failed the test.

27.     In 2001 Marshall continued to be humiliated and devastated by her discriminatory treatment by defendants on a daily basis. Marshall in 2001 filed a formal discrimination charge simultaneously with the Prince George's Human Relations Commission (PGCHRC) County and the EEOC. On April 16,2002, after the PGCHRC investigated Marshall's discrimination complaint it found that there was sufficient evidence to support Marshall's allegation that she had been retaliated against by defendant EER (A.K.A. L-3).

28.     After Marshall's favorable determination from the PGCHRC in April 2002, the defendants Honeywell and EER on a daily basis increased and continued to harass, discriminate and retaliate against her in the workplace by making racial, sexual or age related comments, denying her access to information, meetings and the right to supervise and discipline whites and/or males and to perform her job. Because these same defendants continued to deny Marshall the right to discipline white and male employees and by impeding Marshall's ability to perform her job which caused her extreme emotional stress and strain and depression in the workplace.

29.     The defendants harassment was so pervasive to the point that Marshall was unable to sleep, eat or concentrate and have a loving relationship with her spouse and family. As a direct result of the defendants' conduct Marshall had to repeatedly complain in 2002 though 2003 to the NASA officials about being discriminated against by defendants who were government contractors.

30.     The NASA officials met with Marshall and heard her complaints. Allegedly these NASA officials spoke to the defendants Honeywell and EER (AKA L-3). However, defendants never investigated or resolved Marshall's Title VII complaints or any other complaints.

31.     In 2003 after Marshall continued to file her complaints to defendants Honeywell and L-3, she was told by her white male supervisor Mike Eder that he did not

care how many complaints she filed he was not going to treat her any better.

32.    In 2003 EER formally became L-3. Defendants Honeywell and L-3 allowed a white male subordinate employee supervised by Marshall to write her work performance evaluations, something defendants did not do to white and male supervisor/managers in the workplace, which again degraded and humiliated Marshall. Marshall complained about a white male subordinate writing and evaluating her. Eder told Marshall there was nothing she could do about it.

33.    In June of 2003, Marshall's supervisor Mike Eder went on to encourage another white male subordinate to file a union grievance against Marshall claiming that he did not like how Marshall had spoken to him. Marshall requested in writing to defendants to identify the policy and rule that she allegedly violated and to this date has provided no written explanation or disposition of the alleged grievance.

34.    Moreover, defendants in 2003 informed its employees that its contract was ending and that all employees would have to reapply for their jobs.

35.    In or about November of 2003 or before defendants' Honeywell and L-3 also informed its employees that there would be a new subcontractor named SGT except for Plaintiff Marshall. The defendants also notified and told all of its contractor employees except for Marshall when to interview for their jobs in December 2003 with SGT.

36.    Marshall had to repeatedly inquire for many months about when she was going for an interview for her job as Voice Control Operator Supervisor and was not told until late December 2003 well after all of the defendants' other employees had all been hired by SGT.

37.    On or about December 19, 2003, Marshall finally interviewed with the new contractor SGT for her position and was told by SGT that allegedly her position was not in the new contract and that her job had been eliminated, however other similarly situated white and male employees were not told this and were hired by SGT.

38.    SGT told Marshall that Honeywell kept her position under its contract.

39.    SGT told Marshall in December 2003 that if it had a job for her it would hire her.

40.    SGT also told Plaintiff in December 2003 that they would have to find another job for her but failed to do so.

41.    SGT in December 2003 hired all of Plaintiff's employees she supervised starting January 1, 2004 contract but not her.

42.    On or about December 31,2003, defendants informed Plaintiff that she was the only employee and/or manager that was not hired on the new contract and that she was not being hired for her old position or any other position with the defendants.

43.    After being terminated Marshall subsequently learned that the defendants Honeywell and SGT on or about January 1,2004 or before had hired a white male for Plaintiff's position and/or job duties as voice control supervisor. The white male employee had little or no experience as voice control supervisor or of Marshall's area. Defendants increased the white male' salary who replaced Marshall.

44.    The white male that defendants hired to replace Plaintiff was approximately 8-14 years younger than Plaintiff.

45.    The younger white male employee did not have the vast knowledge and experience that Plaintiff had. The position that Plaintiff sought to retain was denied to her

37.     On December 19, 2003, Marshall finally interviewed with the new contractor SGT for her position and was told by SGT that allegedly her position was not in the new contract and that her job had been eliminated, however other similarly situated white and male employees were not told this and were hired by SGT.

38.     SGT told Marshall that Honeywell kept her position under its contract.

39.     SGT told Marshall in December 2003 that if it had a job for her it would hire her.

40.     SGT also told Plaintiff in December 2003 that they would have to find another job for her but failed to do so.

41.     SGT in December 2003 hired all of Plaintiffs employees she supervised starting January 1, 2004 contract but not her.

42.     On or about December 31,2003, defendants informed Plaintiff that she was the only employee and/or manager that was not hired on the new contract and that she was not being hired for her old position or any other position with the defendants.

43.     After being terminated Marshall subsequently learned that the defendants Honeywell and SGT on or about January 1, 2004 or before had hired a white male for Plaintiff's position and/or job duties as voice control supervisor. The white male employee had little or no experience as voice control supervisor or of Marshall's area. Defendants increased the white males' salary who replaced Marshall.

44.     The white male that defendants hired to replace Plaintiff was approximately 8-14 years younger than Plaintiff.

45.     The younger white male employee did not have the vast knowledge and experience that Plaintiff had. The position that Plaintiff sought to retain was denied to her

and she was not allowed to make and enforce any other contract with the defendants in 2003 or anytime thereafter.

46.    Plaintiff's former job duties are now being performed by a less experienced younger white male employee. Other job positions since 2003 have come available and defendants have not rehired or sought to rehire Marshall for those positions.

47.    The Plaintiff has suffered a loss of income, emotional stress and strain, humiliation, degradation, loss of benefits including past and future wages, full pension, social security and other company and government sponsored benefits.

48.    Defendants Honeywell and L-3 led Marshall to believe up and until December 31, 2003 that she was still being considered for a position and would be hired for a position with SGT, L-3 or with Honeywell like defendants had done for those whites and males who were similarly situated like herself.

49.    On December 31, defendants Honeywell, L-3 and SGT told Marshall for the first time she did not have a job and was not being considered for any other positions.

50.    Marshall was the only black and female employee in her department that was not hired into a position under the new 2004 contract or subcontract of defendants Honeywell, L-3 or SGT.

51.    After being terminated by defendants as a direct result Marshall who was making $50,000 at the time lost her home, income and livelihood.

52.    Marshall's job duties were assumed in 2004 by a white male approximately 8-14 years younger than she. To Plaintiff's knowledge, all employees who were working for Honeywell and L3 retained their jobs when the new sub-contract was taken over by SGT. Plaintiff was the only woman, African American and employee who was not given a job on the new contract.

53.    Plaintiff's termination was another act in a series of discriminatory actions taken against older workers, women and African Americans by Honeywell and L3.

54.    During the 25 years that she had worked at NASA as a contractor she had always successfully performed her job.

55.    Plaintiff was also the only black and female manager over 50 years old employed by defendants Honeywell and L-3 as a contractor. Defendants Honeywell and L-3's white and male employees were allowed, encouraged and would make derogatory comments about Marshall's age and ask her routinely when she was going to retire.

56.    On or about December 31,2003 and in January 2004 Marshall filed three timely discrimination charges against the defendants for discrimination

## COUNT I
## AGE DISCRIMINATION

57.    Plaintiff Taylor incorporates by reference all allegations as alleged in paragraphs one (1) through fifty six (56) as if fully plead herein.

58.    Prior to Sandra Marshall's termination on December 31, 2003, the defendants had vacant positions that were seeking to fill with qualified applicants to start working in 2004.

59.     Specifically, defendants had manager positions and other technical positions available for which they were seeking qualified applicants in 2003.

60.     Defendants told Plaintiff Marshall that her position of Voice Control Operator Manager was open and available for the new NASA contract that would begin in 2004.

61.     Defendants had Marshall to interview for her Voice Control Manager position on or about December 19, 2003, with the full knowledge that the position was eliminated, which was cruel, malicious and discriminatory.

62.     At the time that Marshall interviewed for her position at SGT, the defendants also had other positions that were open and available to be filled for which Marshall was qualified.

63.     However, defendants clandestinely and purposely failed to post or inform Marshall of any other vacant positions for which she qualified for.

64.     Defendants led Plaintiff Marshall until her very last day at work to believe that she had a job and/or would continue to be employed with the defendants up and until December 31, 2003 in some capacity.

65.     Defendants did not inform Plaintiff Marshall prior to her December 19, 2003 interview with SGT that only her position Voice Control Supervisor had allegedly been eliminated.

66.     Defendants were cruel to Marshall and purposely withheld job information and vacancies from her so that she would not apply and be employed with the defendants in any capacity.

67.     Subsequent to learning that her position and duties were allegedly eliminated by the defendants, Marshall learned that defendant SGT had hired a white male younger and less qualified than her self to fill her position, job duties

17

and perform the work she was doing.

68.     Defendants knowing and jointly conspired to willfully discriminate against the Plaintiff on account of age in violation of the Prince Georges's County Code and Section 4(a) (1), Title VII and 42 U.S.C. Sec. 1981 and of the ADEA, 29 U.S.C. 623 (a) (1), with respect to their decision to discharge Plaintiff from her employment and force her into involuntary impoverishment and the right to make a living.

69.     As a direct and proximate consequence of defendants' unlawful and discriminatory employment policies and practices, Plaintiff Marshall has suffered a loss of income, including past and future salary, full pension benefits, and other company-sponsored benefits, humiliation and emotional stress and strain.

## COUNT II

### Title VII, 42 U.S.C.§1981, CRA of 1871, Fifth and Eighth Amendments

70.     Plaintiff and incorporates by reference Paragraphs 1 through 69 of this Complaint as if fully plead herein.

71.     Plaintiff alleges that her Supervisors participated, encouraged and condoned the discriminatory actions of other employees in making derogatory comments to Marshall and other Black and female employees. These comments were unwelcome and based on sex and/or race.

72.     Defendants Honeywell and L-3's employees' comments and acts were sufficiently severe and pervasive as to alter the terms, conditions and privileges of

employment, and to create an abusive, intimidating, hostile and offensive working environment for Plaintiff Marshall.

73.     The defendants Honeywell and L-3 had actual and constructive knowledge of the harassment perpetrated against Marshall and they refused to take remedial action of any kind. Moreover, the defendants participated and orchestrated the harassment and discriminatory acts towards Marshall. Defendants went to great lengths to manufacture false complaints and encouraged white and/or male employees to file false complaints against Plaintiff so as to build a false and misleading paper trail against her.

74.     The Defendant's discriminatory practices and conduct described above has caused Marshall serious financial harm and severe emotional distress and depression.

75.     Accordingly, the defendant violated Marshall's rights protected by § 703 of Title VII of the Civil Rights Act of 1964 as amended.

76.     Defendants' conduct constitutes sexual and racial harassment

77.     Defendants' conduct was unwelcome, rebuffed and complained about by Plaintiff to defendants.

78.     Defendant's failure to prevent and remedy the sexual and racial discrimination, hostile work environment and harassment that Plaintiff was subjected to constituted cruel and unusual punishment in violation of the Eight Amendment to the United States Constitution and Title VII of the CRA of 1964 Amended and 42 U.S. C. § 1981.

79.     Defendant's failure to prevent and remedy the racial and sexual discrimination, hostile work environment, harassment of the Plaintiff deprived her of a liberty and interest without due process in violation of the Fifth Amendment to the U. S. Constitution.

80.     Defendant's failure to prevent and remedy the racial discrimination in the workplace violated Plaintiffs right to make and enforce contracts in violation o

## COUNT III

### RETALIATION

81.     Plaintiff incorporates by reference all allegations from paragraph 1 through 80 as if fully plead herein.

82.     At all times relevant, Marshall had performed her duties as a supervisor without incident and in a satisfactory and/or above satisfactory manner.

83.     Immediately after defendants Honeywell and L-3 received informal internal Title VII complaints from Marshall the defendants engaged in and conspired to have employees complain about her supervisory skills.

84.     After Marshall engaged in protected activity Defendants began to manufacture performance records to give Marshall poor performance evaluations and to deny her bonuses.

85.     Defendants at one point in 2002-2003 allowed a white male subordinate to evaluate Marshall's job performance, something it did not permit when it came to its white and/or male supervisors/managers.

86.     After Marshall filed her first formal Title VIIEEOC Charge in 2001 defendants engaged in more hostile and humiliating acts towards Marshall in the workplace. Specifically, defendants continued to exclude Marshall from meetings, they relieved her of her job responsibilities, they overturned her employee decisions, denied her access to employee records, refused to allow her to discipline white and/or male

employees especially males, they openly instructed employees that they did not have to listen to Marshall when she gave her subordinates instructions or directives they ignored her and they gave Marshall discriminatory and retaliatory performance evaluations in order to deny and justify not giving her raise and/or equal pay with the whites and males for doing the same work.

87.    The defendants refused and failed to investigate any of Marshall's complaints of discrimination and instead challenged her ability to get any results or justice by filing such complaints.

88.    In 2003 defendants conspired to get rid of Marshall by claiming at the end of their 2003 contract that allegedly her job was eliminated and then redistributed and/or gave her job to a younger, less qualified white male.

89.    From June of 2003, until she was terminated in December 2003, Marshall was engaged in protected activity and because she filed complaints with NASA, the PGCHRC, EEOC and the defendants about her discriminatory and continued retaliatory treatment by the defendants, she was terminated by defendants.

90.    After Marshall told defendants in December 2003 that she was going to file EEOC charges against them on December 29,2003, Marshall was terminated by Defendants on December 31, 2003 and denied the right to enter into any contract or apply for any of defendants open job vacancies.

Wherefore as a direct result of Defendant's failure to prevent and remedy discrimination, and harassment in the workplace Plaintiff was deprived of all benefits and rights afforded her under the law.

## COUNT IV
## EQUAL PAY ACT

91.    Plaintiff incorporates by reference all allegations in paragraphs 1 - 90 in as if fully plead herein.

92.    Plaintiff Marshall as a supervisor for Honeywell and L-3 substantially performed the same, or similar job duties as the defendants' male employees.

93.    Plaintiff performed her job duties at all times satisfactory.

94.    Plaintiff was not paid the same rate of pay as the male although she performed the same or similar duties the defendants' male employees.

95.    Plaintiff was treated differently and discriminated against because she was a woman,

96.    At all times relevant Plaintiff performed the same, equal and/or more work than defendants' male managers.

Wherefore as a direct result of Defendant's failure to prevent and remedy the sexual discrimination in the workplace Plaintiff was denied equal pay for equal work in violation of the Equal Pay Act of 1963.

## COUNT V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

97.    Plaintiff adopts and incorporates the allegations of complaint paragraphs 1 though 96 as if fully set forth herein.

98.    Defendants through their agents, intentionally caused severe emotional distress to the plaintiff by way of their extreme, reckless and outrageous conduct, including but not limited to their discrimination, harassment and maintenance of a hostile work environment.

99.    As a direct and proximate result of defendant's extreme, reckless and

outrageous conduct, plaintiff has suffered and will continue to suffer, severe emotional distress, embarrassment, humiliation and mental anguish.

## COUNT VI

## NEGLIGENT SUPERVISION AND RETENTION

100.    Plaintiff adopts and incorporates the allegations of complaint  paragraphs 1 through 99 as if fully plead herein.

101.    The defendants owed a duty of care of its employees relative to fair and equitable treatment as to all terms and conditions of their employment and as to implementing and following the regulations, policies and practices setforth by the federal government and their own individual companies against workplace discrimination, harassment and a hostile work environment.

102.    The defendants breached their duty of care to Marshall by failing to oversee and supervise their own employees, they failed to prevent their supervisors from fairly treating Marshall and in the same manner as they were treating whites and males in the workplace as to all terms and conditions of her employment.

103.    As a direct and proximate result of defendants' negligent supervision of Marshall she suffered emotional distress, embarrassment, humiliation, degradation, depression and loss of self esteem, her livelihood and substantial family income.

## VII.    RELIEF REQUESTED AS TO ALL COUNTS

Wherefore, Plaintiff Marshall respectfully prays for judgment against the defendants each individually, jointly and/or severally as follows:

(a)    For a money judgment representing compensatory damages, including lost wages, back pay, front pay, emotional stress and strain, and all other sums of money, including retirement benefits and other employment benefits, together with

interest on said amounts.

(b)      For a money judgment representing liquidated damages for defendants' willful violations of the County Code, CRA of 1964 as ameneed,42 U.S.C. §1981,1985, CRA 1871, Equal Pay act, Age Discrimination in Employment Act and the Fifth and Eighth Amendments.

( c )    For a money judgment representing prejudgment interest.

(d)      For an Order directing the defendants to reinstate the Plaintiff.

(e)      That Plaintiff be reinstated to her employment with Defendants and to be restored to all of the salary, seniority status, health and welfare benefits, pension, and all other benefits of employment, which she would have had, but for the Defendants' wrongful treatment.

(f)      That Plaintiff be awarded both back pay and/or the front pay she would have earned but for Defendants wrongful treatment including all employee benefits to which she would have been entitled.

(g)      That Plaintiff is awarded compensatory and punitive damages in an amount sufficient to compensate Plaintiff for her losses due to Defendants' wrongful conduct and to punish and deter Defendants from committing similar acts of discrimination in the future and retaliation.

(h)      That Plaintiff is awarded damages for her mental anguish, humiliation and emotional trauma suffered as a result of Defendants' course of discriminatory conduct against her and any other conduct.

(i)      That Plaintiff is awarded the costs of bringing and prosecuting this action including her reasonable attorney's fees incurred in bringing the action as provided under the applicable laws. That Plaintiff is awarded interest.

(j)      That Plaintiff is awarded such other and further relief, as the Court may

deem reasonable and justified under the circumstances of this case.

### VIII.   DEMAND FOR A JURY TRIAL

Plaintiff Sandra Marshall hereby demands a jury trial on all issues triable

by a jury.

Respectfully submitted,

_____/s/_____
Jo Ann P. Myles
Law Office of Jo Ann P. Myles
1300 Mercantile Lane
Suite 139-S
301-773-9652 (Office)
301-925-4070 (Fax)
Bar No. 04412
Attorney For Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of January 2007, a copy of the foregoing

Plaintiff's Corrected Amended Complaint was served upon the defendants by

electronic filing to:

Rafael Morell, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2400 N. Street, N.W. Fifth Floor Washington, D.C.
20037

Chand N. Gupta, Esq.
3981 Alcoa Drive Fairfax,
Virginia 22033

Andrew P. Hallowell, Esq. Piliero,
Mazza & Pargament, PLLC 888 17th
Street N.W. Suite 1100 Washington,
D.C. 20006

_____
Jo Ann P. Myles