IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SANDRA MARSHALL, <br><br> Plaintiff, <br><br> v. <br><br> HONEYWELL TECHNOLOGY SYSTEMS, INC., <br><br> L-3 COMMUNICATIONS, INC., <br><br> and <br><br> SGT, INC., <br><br> Defendants. | Case No. 1:05-CV-02502 (RWR) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SGT INC.'S MOTION TO DISMISS

Defendant SGT, Inc. ("SGT" or "Defendant"), by its undersigned counsel, hereby respectfully submits this memorandum of points and authorities in support of its Motion to Dismiss the Plaintiff's Corrected Amended Complaint.

As discussed more fully below, the Corrected Amended Complaint, which alleges causes of action for employment discrimination on the basis of age, racial and sexual harassment, hostile work environment, retaliation, negligent supervision, negligent retention, intentional infliction of emotional distress, civil rights violations under the Fifth and Eighth Amendments of the United States Constitution, 42 U.S.C. §1981 and the Equal Pay Act, should be dismissed because Plaintiff failed to exhaust her administrative remedies and to state causes of action for

which relief can be granted. SGT respectfully requests that the Court enter judgment in its favor pursuant to Fed. R. Civ. P. 12(b)(6).

In the multiple iterations of Plaintiff's complaint over the course of a year, Plaintiff has failed to allege that SGT engaged in any actionable conduct. Plaintiff allegedly suffered discrimination on the basis of age, race and gender at the hands of Honeywell Technology Systems, Inc. ("Honeywell") and L-3 Communications, Inc. ("L-3"). SGT, as a new subcontractor to the project, was not awarded the personnel position which Plaintiff occupied with Honeywell and L-3. Therefore, SGT was unable to hire Plaintiff. Plaintiff concedes these facts, yet still attempts to hold SGT accountable for the harm she allegedly suffered because of Honeywell and L-3. As discussed more thoroughly below, SGT respectfully requests that all counts of Plaintiff's Corrected Amended Complaint be dismissed.

I.   Statement of the Case

On or about December 30, 2005, Plaintiff initially brought an action against Honeywell, L-3 and SGT (collectively, the "Defendants") alleging that Defendants discriminated against Plaintiff on the basis of age. Defendants each filed motions to dismiss the initial complaint and Plaintiff moved to strike Defendants' motions. On or about January 12, 2007, Plaintiff filed an Amended Complaint. In light of the Amended Complaint, on January 18, 2007, the Court denied Defendants' previous motions to dismiss and Plaintiff's Motion to Strike and ordered that answers or responses to the Amended Complaint be filed by February 1, 2007. On or about January 29, 2007, Plaintiff filed a Motion for Leave of Court to File the instant Corrected Amended Complaint. None of the Defendants objected to Plaintiff's motion, and the Court granted the Defendants until February 15, 2007, to file responses to Plaintiff's Corrected Amended Complaint.

2

II.     Plaintiff's Factual Allegations

In her Corrected Amended Complaint, Plaintiff alleges that she worked for Honeywell and L-3 from 1999 until 2003. (Corrected Amended Complaint, ¶¶ 14 and 50). During the course of her employment with Honeywell and L-3, Plaintiff alleges that she was constantly subjected to slurs by Honeywell and L-3's managers and employees about her race, sex and age. (Corrected Amended Complaint, ¶ 17a). Plaintiff alleges that as a result of the actions of Honeywell and L-3's managers and employees, she suffered extreme humiliation, mental anguish and embarrassment. (Corrected Amended Complaint, ¶ 19a). In response to the treatment Plaintiff allegedly suffered while employed by Honeywell and L-3, Plaintiff alleges that she filed an internal Title VII complaint with Honeywell and L-3 as well as a Title VII complaint against Honeywell and L-3 with the Prince George's County Human Relations Commission ("PGCHRC") and the Equal Employment Opportunity Commission ("EEOC"). (Corrected Amended Complaint, ¶¶ 20 and 27).

Plaintiff alleges that in late 2003, SGT was named the new subcontractor on the project to which she was assigned. (Corrected Amended Complaint, ¶ 35). Plaintiff alleges that on or about December 19, 2003, she interviewed with SGT for the Voice Control Supervisor position she held with Honeywell and L-3. (Corrected Amended Complaint, ¶ 37.) During the December 19, 2003 interview, Plaintiff alleges that SGT informed Plaintiff that the Voice Control Supervisor position was not part of its subcontract and that Honeywell retained the Voice Control Supervisor position. (Corrected Amended Complaint, ¶¶ 37 and 38). Plaintiff alleges that, on or about December 31, 2003, Defendants informed her that SGT was not hiring her for a Voice Control Supervisor position. (Corrected Amended Complaint, ¶ 42). Allegedly,

Honeywell and L-3 also informed Plaintiff that she would no longer occupy any position with them. (Corrected Amended Complaint, ¶ 42).

Finally, Plaintiff alleges that, prior to filing this action, she timely filed a written charge of race, sex and age discrimination with the PGCHRC and EEOC. (Corrected Amended Complaint, ¶ 9). Plaintiff also alleges that she filed the instant action subsequent to the expiration of sixty (60) days from the filing of a charge of age discrimination with the PGCHRC and the EEOC and less than two (2) years after the alleged discrimination occurred. (Corrected Amended Complaint, ¶ 10). Plaintiff alleges that because the EEOC had an incorrect address on file, she did not receive a "Right to Sue Letter" from the EEOC until approximately October 27, 2006. (Corrected Amended Complaint, ¶ 11). Plaintiff alleges that she filed the instant Corrected Amended Complaint less than ninety (90) days after receiving the "Right to Sue Letter." (Corrected Amended Complaint, ¶ 11).

III.    Argument

    A.    Applicable Legal Standards – Motion to Dismiss

An order granting dismissal pursuant to Rule 12(b)(6) is proper if the complaint does not disclose, on its face, a legally sufficient cause of action. A motion should be granted only if, after accepting all well-pleaded factual allegations in the complaint as true, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

If, on a motion to dismiss under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56…" Fed. R. Civ. P. 12(b). However, where a document is referred to in the complaint and is central to the plaintiff's claim, such a document

4

attached to the motion papers may be considered without converting the motion to one for summary judgment. *Vanover v. Hantman*, 77 F. Supp.2d 91, 98 (D.D.C. 1999). Plaintiff's alleged charge of age discrimination filed with the PGCHRC and the EEOC falls under this exception and should be considered without converting the motion to one for summary judgment.

> B. Count I of the Corrected Amended Complaint Should be Dismissed Because Plaintiff has Not Exhausted Her Administrative Remedies.

The Corrected Amended Complaint alleges that Defendants knowing and jointly conspired to willfully discriminate against Plaintiff on account of her age in violation of the Prince George's County Code, Title VII, 42 U.S.C. §1981 and the Age Discrimination in Employment Act of 1967 ("ADEA"). (Corrected Amended Complaint, ¶ 68). In order to bring an ADEA claim in federal court, a plaintiff must first have filed a timely administrative charge alleging a violation of the ADEA. *See* 29 U.S.C. § 629(d) (explaining that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC].").

The "charge" requirement mandates the filing of a written statement identifying the potential defendant and generally describing the alleged discriminatory incident. H.R.Rep. No. 95-950, at 12 (1978), U.S.Code Cong. & Admin. News 528, 534. The EEOC charge gives the charged party notice of the claim and "narrow[s] the issues for prompt adjudication and decision." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 (D.C. Cir. 1976)).

Compliance with the requirement for administrative exhaustion is mandatory. *Brown v. General Services Administration*, 425 U.S. 820, 832-33 (1976). The need for a clear charge to be filed with the EEOC is essential, as the Court has emphasized: "Allowing a complaint to

5

encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Mianegaz v. Hyatt Corp.*, 319 F. Supp.2d 13, 17 (D.D.C. 2004) (quoting *Marshall v. Fed. Express Corp.,* 130 F.3d 1095, 1098 (D.C. Cir. 1997)).

In the instant case, Plaintiff's EEOC/PGCHRC charge makes no mention of age discrimination. *See* Exhibit "A". There is nothing in Plaintiff's EEOC/PGCHRC charge that would reasonably lead one to conclude that Plaintiff was the victim of age discrimination. Plaintiff did not check the "age" box on the charge form in response to the prompt to check all appropriate boxes representing the basis of discrimination. Plaintiff only checked the "race" and "sex" boxes. The Court need not rest its decision on an omitted check mark. Plaintiff's description of the alleged discriminatory activity also clearly omits any reference to or suggestion of age discrimination and focuses solely on race and sex discrimination:

> I believe the Respondent has discriminated against me on the bases of my race (Black), sex (Female), in the terms, conditions, and privileges of my employment and retaliation because:
>
> I gained employment with a Sub-contractor as a Voice Control Supervisor. I have always demonstrated satisfactory performance. On December 19, 2003, I interviewed with a new Sub-contractor. The cited Sub-contractor informed me that my previous position was not in their contract. On January 1, 2004, the cited Sub-contractor's contract becomes effective. Other similarly situated employees' (White, Male) positions were not eliminated from the contract. I later found out that my previous position was being filled with another employee (White, Male).
>
> I believe the cited Sub-contractor retaliated against me when they learned of the previous Title VII based complaints I filed with the Prince George's County Human Relations Commission.
>
> I believe the Sub-contractor has treated me in this manner because of my race (Black), sex (Female) and retaliated against me because I filed a previous Title VII based complaint.

6

*See* Charge of Discrimination, Exhibit "A."

Thus, Plaintiff's omissions of any reference to age are more than just technical defects in the charge. Plaintiff's description of the alleged discrimination only mentions discrimination based on race and sex. Plaintiff's charge provides the Defendant with no notice of Plaintiff's current complaint that Defendant violated the ADEA.

Plaintiff also failed to exhaust the administrative remedies available to her under Maryland law. In Maryland, a person may bring an action in court if she is subject to discrimination, including discrimination on the basis of age, in violation of the Prince George's County Code. *See* Md. Ann. Code art. 49B §42(a). However, the Maryland code prohibits a person from filing an employment based discrimination claim in court "sooner than 45 days after the person files a complaint with the county agency responsible for handling violations of the county discrimination laws." Md. Ann. Code art. 49B §42(b)(2). The PGCHRC is the agency responsible for handling violations of the Prince Georges County's discrimination laws. *See* Prince Georges County Code §2-185.

As the Plaintiff's charge of discrimination with the PGCHRC demonstrates, Plaintiff has not filed a complaint of age based discrimination with the agency. *See* Exhibit A. Therefore, Plaintiff has not exhausted her administrative remedies because she did not file the current complaint forty-five (45) days after filing a charge with the PGCHRC.

Plaintiff's allegation that Defendants allegedly discriminated against her on account of age in violation of Title VII and 42 U.S.C. §1981 should also be dismissed because Title VII and 42 U.S.C. §1981 do not provide relief for age discrimination. Title VII prohibits discrimination on account of an individual's race, color, religion, sex or national origin. *See* 42 U.S.C. §2000e-2(a)(1). Title VII does not prohibit discrimination on the basis of age. Similarly, 42 U.S.C.

7

§1981 does not prohibit discrimination on the basis of age, but rather, affords all individuals the "full and equal benefits of all laws and proceedings" as is enjoyed by "white citizens." *See* 42 U.S.C. §1981. Thus, 42 U.S.C. §1981, like Title VII, does not prohibit discrimination on the basis of age. Accordingly, Plaintiff's allegations that Defendants engaged in age discrimination in violation of Title VII and 42 U.S.C. §1981 should be dismissed because Plaintiff has failed to allege a cause of action upon which relief can be granted.

Plaintiff's EEOC/PGCHRC charge fails to give Defendant any notice of the charge of age discrimination. As such, Plaintiff has not satisfied the mandatory requirement of administrative exhaustion. Therefore, the Court should dismiss Count I of Plaintiff's Corrected Amended Complaint.

> C. Count II of the Corrected Amended Complaint Should be Dismissed As To SGT Because Plaintiff Does Not State a Claim Against SGT.

In Count II of the Corrected Amended Complaint, Plaintiff alleges that the actions of Defendants Honeywell and L-3 violated Plaintiff's rights protected by Title VII of the Civil Rights Act of 1964. (Corrected Amended Complaint, ¶ 75). Plaintiff also alleges that Defendants Honeywell and L-3's "failure to prevent and remedy the sexual and racial discrimination, hostile work environment and harassment" gives rise to three causes of action: (1) cruel and unusual punishment in violation of the Eight Amendment of the United States Constitution, Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 (Corrected Amended Complaint, ¶ 78), (2) a deprivation of "liberty and interest without due process" in violation of the Fifth Amendment of the United States Constitution, (Corrected Amended Complaint, ¶ 79), and (3) a violation of Plaintiff's right to make and enforce contracts. (Corrected Amended Complaint, ¶ 80).

Noticeably absent from Count II of the Corrected Amended Complaint is an allegation that SGT engaged in any improper conduct. Thus, Plaintiff has made no claim in Count II against SGT for which relief can be granted. Accordingly, Count II of the Corrected Amended Complaint should be dismissed against SGT.

Furthermore, even if Plaintiff alleged that SGT engaged in improper conduct, the Fifth and Eight Amendments would not entitle her to any relief. The conduct of private parties is not actionable under the Fifth Amendment of the Constitution. *See Public Utilities Commission of D.C. v. Pollack*, 343 U.S. 451, 461-62 (1952) (holding that the Fifth Amendment applies to and restricts only the Federal Government). As Plaintiff has conceded, SGT is a private corporation incorporated under the laws of the State of Maryland. (Corrected Amended Complaint, ¶ 7). Therefore, Plaintiff cannot prove any set of facts that would entitle her to relief under the Fifth Amendment.

As a plain textual reading of the Eighth Amendment reveals, the purview of the Eighth Amendment is with punishment of crimes. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976). As such, a claim under the Eight Amendment requires action by a government actor. *See Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 258 (1989) (explaining that "the Eighth Amendment places limits on the steps a government may take against an individual"). Given the absence of an allegation that SGT is a government actor, Plaintiff is also unable to demonstrate any facts that would entitle her to relief under the Eighth Amendment.

Lastly, Plaintiff is not entitled to relief under the "make and enforce contracts" provisions of the Civil Rights Act. 42 U.S.C. § 1981. From the outset, Plaintiff fails to allege that an employment contract into which she sought to enter existed. (*See* Corrected Amended Complaint, ¶ 80 (alleging only in general terms that Plaintiff's right to enter into contracts had

9

been infringed)). The absence of the existence of an *actual* contract precludes the Plaintiff from being entitled to relief. *See Bennett v. U.S. Chess Federation*, __ F. Supp. 2d __, 2006 WL 1883424 (D.D.C. 2006).

> D. <u>Count III of the Corrected Amended Complaint Should be Dismissed Because Plaintiff Cannot Establish a Casual Relationship Between Her Informal and EEOC Complaints and SGT's Decision Not to Hire Her.</u>

The Corrected Amended Complaint alleges that the Defendants retaliated against the Plaintiff for filing internal and EEOC charges against Defendants Honeywell and L-3. (Corrected Amended Complaint, ¶¶ 81-90). In order to establish a prima facie case of retaliation, Plaintiff must demonstrate that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) the adverse action was causally related to the exercise of her rights." *Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C. Cir. 2006); *see also Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002); *Brown v. Brody*, 199 F.3d 446, 452-53 (D.C. Cir. 1999).

Demonstrating a causal relationship between adverse employment action and engaging in activity protected by Title VII, can be satisfied by demonstrating that the "employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). Plaintiff alleges that she filed informal, internal Title VII complaints against Defendants Honeywell and L-3. (Corrected Amended Complaint, ¶ 83). Plaintiff also alleges that she filed a formal Title VII EEOC charge in 2001 against Defendants Honeywell and L-3. (Corrected Amended Complaint, ¶ 86). Plaintiff does not allege that either of these charges were filed against SGT. Because SGT was not named the new subcontractor until on or about November 2003 and did

10

not begin work as the subcontractor until January 2004 (Corrected Amended Complaint, ¶ 35), Plaintiff's 2001 complaints, in fact, could not have been filed against SGT.

Plaintiff does not allege that SGT had knowledge of the 2001 complaints. Furthermore, even if Plaintiff had alleged that SGT had knowledge of Plaintiff's 2001 complaints, these complaints were allegedly filed over two years prior to SGT's decision not to hire Plaintiff. SGT's decision not to hire Plaintiff did not occur shortly after Plaintiff filed the complaints in 2001, and SGT's decision was in no way related to their alleged existence.

Plaintiff's sole allegation that SGT had knowledge of any complaints she filed also fails to establish that SGT retaliated against her. Plaintiff alleges that at some point in December 2003 she informed presumably all Defendants that she was going to file EEOC charges against them on December 29, 2003. (Corrected Amended Complaint, ¶ 90). However, as Plaintiff concedes, SGT had already informed Plaintiff ten days earlier, on December 19, 2003, that it had not been awarded the Voice Control Manager position as part of its subcontract. (Corrected Amended Complaint, ¶ 37). Therefore Plaintiff cannot demonstrate that SGT made any adverse employment determination as the result of Plaintiff's complaints. By Plaintiff's own admission, SGT informed her that it was not awarded the Voice Control Manager position in its subcontract *before* she notified SGT that she intended to file an EEOC complaint against SGT. (*Compare* Corrected Amended Complaint, ¶ 37 *with* Corrected Amended Complaint, ¶ 90). Because Plaintiff's own allegations evidence no causal relationship between SGT's decision not to hire her and Plaintiff's December 29, 2003 EEOC complaint, Plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Accordingly, Count III of the Corrected Amended Complaint should be dismissed.

E.    <u>Count IV of the Corrected Amended Complaint Should be Dismissed Because SGT Never Employed SGT and Plaintiff Cannot Establish a Set of Facts Which Would Entitle Her to Relief from SGT.</u>

Plaintiff, in Count IV of the Corrected Amended Complaint, alleges that the Defendants failed to pay the Plaintiff at the same rate that they paid male employees for similar work, thereby violating the Equal Pay Act. (Corrected Amended Complaint, ¶¶ 91-96). To raise an Equal Pay Act violation the Plaintiff must establish the prima facia criteria that the "employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)). Plaintiff cannot establish the prima facia criteria for an Equal Pay Act violation against SGT because SGT never employed the Plaintiff. (*See* Corrected Amended Complaint, ¶¶ 37 and 41).

In the Corrected Amended Complaint Plaintiff explains that she was employed as a supervisor with both Honeywell and L-3. (Corrected Amended Complaint, ¶ 92). At no point does Plaintiff ever allege that she was employed by SGT. In fact, Plaintiff alleges just the opposite -- that SGT never hired her. (*See* Corrected Amended Complaint, ¶¶ 37 and 41). Since Plaintiff has never been an employee of SGT, she has never been paid any wages by SGT. Therefore, the Plaintiff cannot allege that SGT has violated the Equal Pay Act. Because Plaintiff cannot prove any set of facts that would entitle her to relief from SGT, Count IV of the Corrected Amended Complaint should also be dismissed.

      F.    <u>Count V of the Corrected Amended Complaint Should be Dismissed Because Plaintiff Cannot Establish that SGT Engaged in Extreme and Outrageous Conduct.</u>

In Count V of the Corrected Amended Complaint, Plaintiff alleges that the Defendants "intentionally caused severe emotional distress…by way of their extreme, reckless and outrageous conduct." (Corrected Amended Complaint, ¶ 98). In order to effectively plead intentional infliction of emotional distress, the Plaintiff must allege "(1) 'extreme and outrageous' conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1306 (D.C. Cir. 2002) (quoting *Howard University v. Best*, 484 A.2d 958, 985 (D.C. 1984)). In order for an intentional infliction of emotional distress claim to be actionable, the defendant's conduct "must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" *Howard University v. Best*, 484 A.2d 958, 986 (D.C. Cir. 1984) (quoting *Jackson v. D.C.*, 412 A.2d 948, 957 (D.C. 1980) and the Restatement (Second) of Torts § 46, Comment d (1965)). The necessity of outrageous conduct is so vital to an intentional infliction of emotion distress claim that it is proper "for the trial court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Best*, 484 A.2d at 985.

Plaintiff claims that Defendants' "extreme, reckless and outrageous conduct" involved "discrimination, harassment and maintenance of a hostile work environment." (Corrected Amended Complaint, ¶ 98). As previously explained, SGT never hired the Plaintiff. (*See* Corrected Amended Complaint, ¶¶ 37 and 41). Having never employed Plaintiff, SGT has not engaged in any conduct conducive to discrimination, harassment or maintenance of a hostile work environment.

Furthermore, assuming *arguendo* that SGT's decision to not hire the Plaintiff amounts to "conduct" for an intentional infliction of emotional distress claim, this conduct is not extreme and outrageous as a matter of law. *See Best* 484 A.2d at 986 (explaining that "employer-employee conflicts do not, as a matter of law, rise to the level of outrageous conduct."). The failure of a prospective employer to hire an individual can hardly be described as conduct so outrageous that it goes "beyond all possible bounds of decency." *Id.*; *see also Beidler v. W.R. Grace, Inc.*, 461 F. Supp. 1013, 1016 (E.D. Pa. 1978) (holding that "plaintiff's averment he was excluded from staff meetings, was never informed about his job performance and was told a new assistant would replace him, failed to state cause of action for intentional infliction of emotional distress"). Significantly, in contrast to *Best* and *Beidler*, which both involved plaintiffs who had employer-employee relationships, in the instant case Plaintiff never had an employer-employee relationship with SGT. Because, as a matter of law, conduct surrounding employment issues does not rise to the level of extreme and outrageous conduct, Plaintiff has failed to allege a cause of action against SGT for which relief can be granted. Therefore, Count V of the Corrected Amended Complaint should be dismissed.

    G.    <u>Count VI of the Corrected Amended Complaint Should be Dismissed Because Plaintiff Cannot Demonstrate that SGT Either Negligently Supervised or Retained any Employees</u>

        1.    <u>Negligent Supervision</u>

Plaintiff's last count alleges negligent supervision and retention, two distinct torts, but fails to properly allege a claim surrounding the torts. In claiming that the Defendants are liable for negligent supervision, Plaintiff alleges that the Defendants owed "a duty of care of its employees relative to fair and equitable treatment as to all terms and conditions of their employment." (Corrected Amended Complaint, ¶ 101). Assuming, *arguendo*, that SGT owed

14

its employees the duty Plaintiff alleges, SGT never owed Plaintiff this duty because Plaintiff has never been an employee of SGT.  (*See* Corrected Amended Complaint, ¶¶ 37 and 41).

Never having been an employee of SGT, Plaintiff did not have any terms or conditions of employment with SGT.  Therefore, SGT never owed Plaintiff a duty of care with respect to fair and equitable treatment surrounding terms and conditions of employment.  Accordingly, there can be no determination that SGT was negligent because duty is an indispensable element of any negligence action.  *See, e.g.*, *Powell By and Through Ricks v. D.C.*, 634 A.2d 403, 406 (D.C. 1993) (explaining duty is an essential element of a negligence cause of action); *see also St. Mary's County Dep't. of Social Services*, 382 Md. 170, 181-82 (July 28, 2004) (holding that duty is a well-established requirement of any negligence action).[1]  Consequently, the Plaintiff is not entitled to relief and the claim should be dismissed.

Furthermore, also assuming *arguendo*, that SGT did owe Plaintiff the duty of care she alleges, Plaintiff does not allege that SGT's failure to supervise its employees was either the cause-in-fact or proximate cause of her damages.  Causation, like duty, is an indispensable element of a negligence action.  *Powell*, 634 A.2d at 406; *see also St. Mary's County Dep't. of Social Services*, 382 Md. at 180-83.  Rather, Plaintiff alleges that "[a]s a direct and proximate result of [D]efendants' <u>negligent supervision of Marshall</u> she [the plaintiff] suffered" damages. (Corrected Amended Complaint, ¶ 103 emphasis added).  As the Plaintiff clearly alleges, any damages she suffered were the result of the Defendants failure to properly supervise her.

---

[1] In the Corrected Amended Complaint, Plaintiff removes any reference to D.C. law with respect to her claims of negligent supervision and negligent retention.  D.C. law requires use of the "interest analysis" method to determine which jurisdiction's law shall control these claims.  *See Stutsman v. Kaiser Foundation Health Plan*, 546 A.2d 367 (D.C. 1988).  The only other possible substantive law emanates from Maryland, as the alleged events occurred in Maryland.  Given that Maryland substantive law in negligence cases also requires a showing that the defendant has a duty to protect plaintiff from injury, there is no real conflict between D.C. and Maryland law, and D.C. law should apply by default.  *See Fowler v. A & A Co.*, 262 A.2d 344, 348 (D.C. 1970) (holding that in a situation where laws are not conflicting, D.C. law should control).  However, SGT respectfully submits that even if Maryland substantive law were to be applied, Plaintiff's claims of negligent supervision and negligent retention would still not entitle her to relief.

Therefore, the Plaintiff cannot demonstrate damages "proximately caused by the breach of duty" and Plaintiff's claim of negligent supervision against SGT should be dismissed. *Powell*, 634 A.2d at 406.

2. <u>Negligent Retention</u>

Plaintiff's claim of negligent retention should be dismissed because Plaintiff has failed to state a claim upon which relief can be granted. "In order to prevail on a negligent retention claim, plaintiffs must first prove that [the employee] was negligent and must then prove the additional element of negligent retention." *Daka, Inc. v. McCrae*, 839 A.2d 682, 694 n. 12 (D.C. 2003) (quoting *Rogala v. D.C.*, 161 F.3d 44, 56 n. 9 (D.C. 1998)); *see also Evans v. Morsell*, 395 A.2d 480, 483 (Md., 1978)(explaining general duties surrounding negligent retention of employees). Plaintiff fails, in the Corrected Amended Complaint, to identify even one employee of SGT that was negligent in any regard. As such, Plaintiff fails to meet the threshold requirement of demonstrating the existence of a negligent employee, much less that this employee was subsequently retained by SGT.

Furthermore, Plaintiff has also failed to allege that she suffered any damages as a result of the alleged negligent retention. Plaintiff only claims that "[a]s a <u>direct and proximate result of [D]efendants' negligent supervision</u> of Marshall she [the Plaintiff] suffered emotional distress, embarrassment, humiliation and loss of self-esteem." (Corrected Amended Complaint, ¶ 103 emphasis added). Damages, in addition to duty to causation, are an indispensable element of a negligence claim. *See, e.g.*, *Powell*, 634 A.2d at 406 (explaining that damages are an element of a common law action for negligence); *see also St. Mary's County Dep't. of Social Services*, 382 Md. at 182 (listing damages as a required element of a negligence action). As such, Plaintiff is not entitled to relief because she has not alleged that she suffered any damages as a result of

16

negligent retention. Therefore, Count VI of the Corrected Amended Complaint should be dismissed.

    H.    <u>Plaintiff's Allegation that Defendants Violated Executive Order 11,246 Should be Dismissed Because No Private Right of Action is Available to Plaintiff Under Executive Order 11,246.</u>

Plaintiff alleges that the instant action is brought under Executive Order 11, 246, among other causes as discussed above. (Corrected Amended Complaint, ¶ 1). Plaintiff does not include a discussion of Executive Order 11,246 in any of her six enumerated counts. In fact, no mention of Executive Order 11, 246 exists in the Corrected Amended Complaint other than its inclusion in a string of statutes which Defendants have allegedly violated.

Executive Order 11, 246 affords Plaintiff no private cause of action. *See Fed. Reg*. 12, 319 (1965). Accordingly, Plaintiff's claim that Defendants violated Executive Order 11, 246 should be dismissed. *Shekoyan v. Sibley International Corp.*, 217 F. Supp.2d 59, 70 (D.D.C. 2002) (holding that because Executive Order 11,246 does not provide for a private cause of action, plaintiff's claim must be dismissed).

III.    <u>Conclusion</u>

In summary, Plaintiff has filed a Corrected Amended Complaint that is as infirm as the original Complaint and the first Amended Complaint. Making broad brushed allegations, Plaintiff is seeking to hold SGT accountable for the actions allegedly taken by the other Defendants or by unidentified third parties. Noticeably absent from Plaintiff's Corrected Amended Complaint are well-plead allegations that SGT engaged in any actionable conduct. For all the foregoing reasons, SGT respectfully requests that its Motion to Dismiss Plaintiff's

Corrected Amended Complaint be granted and that the Corrected Amended Complaint be dismissed with prejudice.

                                              Respectfully submitted,

Date:  February 15, 2007            /s/ Antonio R. Franco  
                                              Antonio R. Franco, Esq.  
                                              D.C. Bar No. 416787  
                                              Jennifer L. Andrews, Esq.  
                                              D.C. Bar No. 496974  
                                              PilieroMazza PLLC  
                                              888 17th Street, N.W., Suite 1100  
                                              Washington, D.C. 20006  
                                              (202) 857-1000

                                              Counsel for Defendant SGT, Inc.