**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                )
SANDRA MARSHALL,                 )
                                )
            Plaintiff,           )
                                )
        v.                       )      Civil Action No. 05-2502 (RWR)
                                )
HONEYWELL TECHNOLOGY             )
SOLUTIONS, INC. et al.,          )
                                )
            Defendants.          )
_____)

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Sandra Marshall's corrected amended complaint variously alleges against defendants Honeywell Technology Solutions, Inc. ("Honeywell"), L-3 Communications Government Services, Inc. ("GSI") and SGT, Inc. ("SGT"), age, sex, and race discrimination and retaliation, violations of her Fifth and Eighth Amendment protections and her rights under the Equal Pay Act, and common law claims for intentional infliction of emotional distress and negligent supervision. SGT moved to dismiss all claims against it and GSI moved to dismiss all but one claim against it, each arguing that Marshall had failed to state a claim upon which relief could be granted or had failed to meet mandatory administrative or litigation filing deadlines and was time-barred.[1] GSI also moved to transfer the remaining claim for improper venue. Because Marshall failed to state a Fifth

---

[1] Honeywell did not move to dismiss the claims Marshall alleged in her corrected amended complaint.

-2-

Amendment claim, an Eighth Amendment claim, a claim under § 1981
for sex discrimination, a claim for the intentional infliction of
emotional distress, or a claim for negligent supervision and
retention, all such claims brought against GSI or SGT will be
dismissed.  Because Marshall failed to meet mandatory deadlines
for filing her federal equal pay claim, her state anti-
discrimination claims, and her federal age discrimination
administrative charges -- which is a prerequisite for filing a
federal civil claim for age discrimination -- all such claims
brought against GSI or SGT will be dismissed.  Because venue is
proper as to the claim that survives against GSI and no other
defendant has challenged venue, GSI's motion attacking venue will
be denied.

<u>BACKGROUND</u>

    The corrected amended complaint makes the following
allegations.  Marshall worked for either Honeywell or its
subcontractor GSI for 25 years.  She was 54-years-old at the time
her employment was terminated on December 31, 2003, when
Honeywell replaced GSI with a new subcontractor, SGT.  (Corrected
Am. Compl. ("CAC") ¶¶ 11, 12, 49.)  While working for GSI, she
was subjected to racial, sexual, and age discrimination in the
form of slurs and harassment by supervisors and other employees,
and limitations on her authority.  For example, defendants told
her that she was emotional, indecisive, and picky, like most

-3-

women; they silenced her but not white male managers in
management meetings; and they undermined her authority over her
white subordinates.  (Id. ¶¶ 17a, 17b, 18, 19a, 22-25, 32, 33.)
When SGT replaced GSI as the subcontractor, SGT hired all the
employees Marshall had supervised and told Marshall that her
position was not included in their contract, but said that it
would hire her if there was a job available.  (Id. ¶¶ 37, 39,
41.)  SGT never employed Marshall, but employed a significantly
less experienced white male who was 8 to 14 years younger than
she to perform the duties Marshall had performed in her job with
GSI.  (Id. ¶¶ 41-45.)  Marshall "has suffered and will continue
to suffer, severe emotional distress, embarrassment, humiliation
and mental anguish" and was "unable to sleep, eat or concentrate
and have a loving relationship with her spouse and family."
(CAC ¶¶ 29, 99.)

     Within a few weeks after her employment with GSI ended,
Marshall filed pro se administrative charges with the Prince
George's County Human Relations Commission ("PGCHRC"), which
amounted to filing with the federal Equal Employment Opportunity
Commission ("EEOC").[2]  She alleged race and sex discrimination

_____

[2]  The PGCHRC is a designated fair employment practice and notice
agency, see 42 U.S.C. § 2000e-5(1); 29 C.F.R. § 1601.74, that has
a work-sharing agreement with the EEOC.  See Rachel-Smith v.
FTData, Inc., 247 F. Supp. 2d 734, 743 (D. Md. 2003) (noting that
PGCHRC is a notice agency with a work sharing agreement with the
EEOC).  The practical effect of this arrangement is that filing
charges with the PGCHRC constitutes filing them with the EEOC, as

-4-

against all three defendants, and retaliation against Honeywell
and GSI. (SGT's Mot. to Dismiss Ex. A; GSI's Mot. to Dismiss
Ex. A.) Almost two years later, on December 30, 2005, Marshall,
through counsel, initiated this civil action alleging only a
single claim under the Age Discrimination in Employment Act
("ADEA"), 29 U.S.C. §§ 621 et seq., against Honeywell, GSI and
SGT, and asserting that "[p]rior to filing this civil action,
Plaintiff timely filed a written charge of age discrimination
with the Prince George's Human Relations Commission . . . and the
Equal Employment Opportunity Commission . . . ." (Compl. ¶ 9.)
The next week, on January 6, 2006, Marshall's administrative
charge filed with the PGCHRC/EEOC was amended to add a claim of
age discrimination. (See Pl.'s Mot. to Strike Ex. 1.) Four
months later, on or about April 25, 2006, Marshall served the
three defendants with the summons and complaint in this action.
In May 2006, the three defendants each filed a motion to dismiss,
asserting that Marshall had not timely filed an administrative
charge of age discrimination. (See SGT's Mot. to Dismiss at 5;
GSI's Mot. to Dismiss at 5; Honeywell's Mot. to Dismiss at 4.)
On October 27, 2006, Marshall received a right to sue letter
issued by the EEOC on October 25, 2006.[3] With the defendants'

_____

well.

[3] The EEOC had previously issued right to sue letters to
Marshall in July 2006, but acknowledged that it was responsible
for mailing them to an improper address, something that was not

-5-

motions to dismiss pending, Marshall filed an amended complaint on January 12, 2007, adding claims for race and sex discrimination, harassment and retaliation, violations of her equal pay rights and constitutional protections, and for two common law personal injuries.  Then, on January 29, 2007, Marshall sought leave, which was granted, to file a corrected amended complaint.[4]

Marshall's corrected amended complaint was further effectively amended by her notice of voluntary dismissal, filed after GSI and SGT had moved to dismiss claims, and again by clarifications in her opposition papers.  The result is that she asserts claims against GSI for (1) age discrimination brought under the ADEA, and the anti-discrimination provisions of Maryland Code 49B § 42, (2) violation of the Equal Pay Act, 29 U.S.C. § 206, (3) race and sex discrimination and retaliation

---

Marshall's fault.  (See Am. Compl. Ex. 1, Letter from U.S. EEOC Baltimore Field Office.)

[4] Counsel are obligated by Federal Rule Civil Procedure 11 to conduct a reasonable inquiry under the circumstances to assure that the allegations made in papers submitted to the court have an evidentiary basis.  Failure to do so may incur sanctions.  Plaintiff's counsel should have determined prior to filing the civil action that, contrary to what the complaint averred, no charge of age discrimination had been filed with the PGCHRC at that point.  Furthermore, counsel should have immediately amended the complaint to correct the false allegation as soon as she learned it was false, but she did not.  Instead, plaintiff's counsel restated the false allegation in both the amended complaint and the corrected amended complaint.  (See Am. Compl. ¶ 9; CAC ¶ 9.)  Plaintiff's counsel will be ordered to show cause why sanctions should not be imposed.

-6-

brought under Maryland's anti-discrimination statute,[5] (4) race and sex discrimination brought under 42 U.S.C. § 1981, (5) violation of the Fifth Amendment's due process protections, (6) violation of the Eighth Amendment protection from cruel and unusual punishment, (7) intentional infliction of emotional distress, and (8) negligent supervision and retention.  With the exception of the § 1981 claim for race discrimination, which GSI does not address either in its motion to dismiss or its reply, GSI has moved to dismiss all claims against it for failure to state a claim.[6]

Marshall also asserts claims against SGT for (1) age discrimination brought under the ADEA and the anti-discrimination

---

[5]  Marshall dismissed all claims against GSI that she had brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.  (Notice of Voluntary Dismissal at 1.)

[6]  GSI also argued that the age discrimination claims should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because Marshall failed to seek and exhaust an administrative remedy for her age claims before filing this action.  "Motions to dismiss for lack of subject matter jurisdiction are cognizable under Federal Rule of Civil Procedure 12(b)(1).  However, motions to dismiss for failure to exhaust administrative remedies are more appropriately analyzed under Rule 12(b)(6)."  Hazel v. Wash. Metro. Transit Auth., Civil Action No. 02-1375 (RWR), 2006 WL 2024966, at *3 (D.D.C. Dec. 4, 2006) (citing Arbaugh v.. Y & H Corp., 126 S. Ct. 1235, 1245 (2006) ("[W]hen Congress does not rank a statutory limitation on [the statute's] coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character.") (additional citations omitted)).  Because none of the limitations periods at issue here is jurisdictional, they will be treated as any other condition precedent or element of a claim, and GSI's motion under Rules 12(b)(1) and 12(b)(6) will be treated as a motion under Rule 12(b)(6) only.

-7-

provisions of the Maryland Code, (2) race and sex discrimination brought under Title VII and the Maryland Code,[7] (3) race and sex discrimination brought under 42 U.S.C. § 1981, (4) violation of her Fifth Amendment protections, and (5) violation of her Eighth Amendment protections.[8]  SGT has moved to dismiss all claims against it.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  A court considering a Rule 12(b)(6) motion to dismiss assumes all factual allegations to be true, even if they are doubtful.  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007); Kowal v. MCI Communc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that a court must construe the complaint "liberally in the plaintiffs' favor" and "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged").  A court need not, however, "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.

---

[7]  Marshall voluntarily dismissed all retaliation claims against SGT.  (Notice of Voluntary Dismissal at 1.)

[8]  As to SGT, Marshall dismissed her Equal Pay Act and common law claims for negligent supervision and intentional infliction of emotional distress.  (Notice of Voluntary Dismissal at 1 (dismissing Equal Pay Act and negligent supervision claim); Opp'n at 23 (dismissing intentional infliction of emotional distress claim).)

-8-

Nor must [a] court accept legal conclusions cast in the form of factual allegations." Id.

The notice pleading standard set forth in Rule 8(a) does not require the plaintiff to plead a prima facie case. See Swierkiewicz v. Sorema, 534 U.S. 506, 511 (2002). Rule 8(a) simply requires "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1114 (D.C. Cir. 2000) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 127 S. Ct. at 1964-65 (internal citations and quotations omitted) (alteration in original). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true . . . ." Id. at 1965 (citations and footnote omitted).

Both GSI and SGT have filed documentary exhibits with their motions to dismiss. Marshall has also filed documentary exhibits and an affidavit with her opposition papers. Generally speaking, if "matters outside the pleadings are presented to and not

excluded by the court, the [Rule 12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b)(6). However, "[w]here a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) (finding that the personnel manual and "the various letters and materials produced in the course of plaintiff's discharge proceeding," all of which were attached to plaintiff's opposition papers, fall under this exception and may be considered without converting the motion to one for summary judgment) (citing Greenberg v. The Life Ins. Co. of Va., 177 F.3d 507, 514 (6th Cir. 1999)). Because the materials appended to the motions to dismiss and opposition are either referred to in or characterized by the pleading, and are central to Marshall's claims, the motions will be decided under the Rule 12(b)(6) standard rather than the summary judgment standard.

I.   CONSTITUTIONAL CLAIMS

GSI and SGT move to dismiss Marshall's Fifth and Eighth Amendment claims because those amendments do not govern either GSI or SGT. It is among the most basic tenets of constitutional law that the Bill of Rights protects individuals from governmental interference with enumerated rights and does not

-10-

apply to disputes between private parties.  Pub. Util. Comm'n of

D.C. v. Pollack, 343 U.S. 451, 461-462 (1952) (holding that the

Fifth Amendment applies to and restricts only the Federal

Government); Browning-Ferris Indus. of Vermont, Inc. v. Kelco

Disposal, Inc., 492 U.S. 257, 258 (holding that "the Eighth

Amendment places limits on the steps a government may take

against an individual").  Because neither the Fifth nor the

Eighth Amendment applies to this dispute, these claims will be

dismissed as to GSI and SGT.

II.  EQUAL PAY ACT AND AGE DISCRIMINATION CLAIMS

     GSI and SGT argue that Marshall's pay and age discrimination

claims should be dismissed because she did not meet certain

deadlines that are conditions precedent for filing civil actions

on each of those claims.  Marshall counters that her pay and age

claims should not be dismissed because they relate back to timely

filed claims or because she is entitled to equitable tolling of

the deadline.

     Marshall did not bring her Equal Pay Act claim against GSI

until she filed her amended complaint on January 12, 2007.  A

claim under the Equal Pay Act must be brought within two years of

the alleged injury.  29 U.S.C. § 255(a); see also Smith-Haynie v.

Dist. of Columbia, 155 F.3d 575, 577 n.1 (D.C. Cir. 1998)

(affirming district court's application of two-year statute of

limitations to Equal Pay Act claims).  Because Marshall's

-11-

employment with GSI ended on December 31, 2003, her Equal Pay Act
claim, first alleged in 2007, is time-barred.

To sue on her federal age claim, Marshall was required first
to file an administrative charge within 300 days of the alleged
discriminatory act and then to wait 60 days before filing a civil
action in federal court. 29 U.S.C. § 626(d)(2). Marshall did
not comply with either the 300-day filing requirement -- a
default that cannot now be cured -- or with the 60-day waiting
period. Similarly, to bring an age discrimination claim under
the Maryland statute, Marshall was required to file an
administrative charge within six months of the alleged injury and
then wait 45 days before filing a civil action under those
provisions. Md. Code 49B §§ 9A(a), 42(b)(2). Marshall observed
neither the mandatory six-month filing deadline -- a default that
cannot now be cured --  nor the 45-day waiting period -- a second
default that cannot now be cured because the Maryland statute's
two-year limitations period has expired. Md. Code 49B
§ 42(b)(1).

Marshall counters that her Equal Pay Act claim relates back
to the ADEA claim she filed on December 30, 2005, making her
Equal Pay Act timely, and that her late-filed age discrimination
administrative charges relate back to her timely-filed race and
sex discrimination administrative charges. Federal Rule of Civil
Procedure 15(c) permits amendments to a complaint that relate

-12-

back to a timely-filed claim only if the amendment grows out of the same set of facts and the timely-filed complaint contained facts sufficient to give defendant adequate notice of the claim presented in the amendment.  See Fed. R. Civ. P. 15(c)(2).[9] "[W]hile amendments that expand upon or clarify facts previously alleged will typically relate back, those that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously." United States v. Hicks, 283 F.3d 380, 388 (D.C. Cir. 2002).  Amendments alleging actionable claims generally are not permitted to relate back to initial complaints if the later claims were not mentioned in the original complaint and are not based on the same set of facts.  See Tripp v. Dep't of Def., 219 F. Supp. 2d 85, 91-92 (D.D.C. 2002).  Thus, where administrative complaints for discrimination based on sex, race and retaliation do not mention critical facts relevant to an age discrimination claim, the later filed age claims do not relate back.  See Thrash v. Library of Congress, Civil Action No. 04-634 (RMU), 2006 WL 463251, at *5-6 (D.D.C. Feb. 24, 2006) (age discrimination claim does not relate

_____

[9]  Whether the PGCHRC allows the amendment is not conclusive of a relation back determination here.  See Rodriguez v. Airborne Express, 265 F.3d 890, 898-99 (9th Cir. 2001) ("In the several federal cases addressing relation back of amended EEOC charges, the agency's acceptance of an amended charge did not end the exhaustion analysis.  In each of these cases the court conducted its own de novo analysis of whether the amendment related back, and gave no apparent weight to the fact that the EEOC had accepted and filed the amendment.") (citing cases).

-13-

back to administrative charges of race and sex discrimination);
see also Wilson v. Commc'ns Workers of Am., 767 F. Supp. 304, 306
(D.D.C. 1991) (age discrimination claim did not relate back to
original race discrimination charge); Pejic v. Hughes
Helicopters, Inc., 840 F.2d 667, 675 (9th Cir. 1988) ("Title VII
and ADEA claims arise from entirely distinct statutory schemes.
Pejic's original charge contains no hint of age discrimination.
His ADEA claim should be time-barred.").

Marshall's original complaint alleging only an ADEA
violation gives no hint of any pay discrimination grievance and
alleges no facts that would support a claim under the equal pay
act.  Because defendants had no notice of a pay claim before the
two-year limitation period expired, the pay claim will not be
permitted as relating back to her age claim.

Marshall's timely-filed administrative charges alleged facts
pertinent to her race, sex and retaliation claims.  (See GSI's
Mot. to Dismiss Ex. A; SGT's Mot. to Dismiss Ex. A.)  They do
not, however, include any hint of the possibility of a claim
based on age discrimination or any other discrimination.  Thus,
Marshall did not allege facts providing defendants adequate
notice of an age discrimination claim within the 300 days
allowed.  Her tardy amendment, filed some 735 days after the
alleged injury, will not be allowed as timely filed under the
relation back principles incorporated in Rule 15(c).

-14-

The limitations period for filing an administrative charge of discrimination is subject to equitable tolling in extraordinary circumstances where justice requires that the plaintiff be spared the consequences of failing to meet the deadline imposed. Zipes, 455 U.S. at 393; see also Chung v. Dep't of Justice, 333 F.3d 273, 275-76 (D.C. Cir. 2003). "The claimant bears the burden of justifying equitable tolling." Hood v. Sears, Roebuck & Co., 168 F.3d 231, 232 (5th Cir. 1999); see also Saltz v. Lehman, 672 F.2d 207, 209 (D.C. Cir. 1982) (affirming district court's dismissal of complaint because plaintiff did not make a showing to support equitable tolling).

Equitable tolling is appropriate "when the plaintiff 'despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim.'" Chung, 333 F.3d at 278-79 (quoting Currier v. Radio Free Europe, 159 F.3d 1363, 1367 (D.C. Cir. 1998)). Equitable tolling "merely ensures that the plaintiff is not, by dint of circumstances beyond his control, deprived of a 'reasonable time' in which to file suit." Id. (quoting Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450-52 (7th Cir. 1990)). This circuit has "set a high hurdle for equitable tolling, allowing a statute to be tolled only in extraordinary and carefully circumscribed instances." Commc'ns Vending Corp. of Ariz. v. Fed. Commc'ns Comm'n, 365 F.3d 1064, 1075 (D.C. Cir. 2004) (quotation marks and citation omitted).

-15-

"[E]quitable tolling is unwarranted where a litigant has failed to exercise due diligence in preserving his legal rights." Id. (internal quotation marks and citations omitted). "Equitable tolling, . . . which ask[s] whether equity requires extending a limitations period, [is] for the judge to apply, using her discretion, regardless of the presence of a factual dispute." Smith-Haynie, 155 F.3d at 579.

Here, GSI and SGT dispute that Marshall exercised diligence prior to filing her administrative complaints. Marshall states that she tried to file an age discrimination charge, was told by the PGCHRC intake officer that she could not, and objected to that direction. (See Opp'n Ex. 1, Marshall Aff. ¶ 3.) She contends that because she relied on the intake officer's direction, equitable tolling should apply to excuse the fact that her age discrimination claim was filed 435 days past the 300 days allowed.

Marshall is no stranger to the administrative charge process, having filed five charges between 2001 and 2004. She objected to the intake officer's alleged refusal to incorporate her age (and perhaps other) claims in the charge, but did nothing to pursue filing her charges in the more than 250 days left in the 300-day limitations period. Furthermore, there is no evidence that Marshall acted with due diligence to pursue her legal rights during the fourteen months after the limitations

-16-

period expired in October 2004.  Marshall filed her age

discrimination administrative charge 735 days after the last of

her alleged age-related injuries, and 435 days after the time to

file such a charge had expired.  Thus, even fully crediting

Marshall's unrebutted sworn statement that she was misled,

because the record does not establish that she acted with due

diligence in pursuing her legal rights in the period between the

encounter with the PGCHRC intake officer and prior to January 6,

2006, she is not entitled to equitable tolling.

III. RACE AND SEX DISCRIMINATION CLAIMS

    Section 1981 of Title 42 of the United States Code protects

the right to make and enforce a contract free of racial

discrimination.  To establish a claim under § 1981, a plaintiff

must show that (1) she is a member of a racial minority group,[10]

(2) the defendant had an intent to discriminate on the basis of

race, and (3) the discrimination concerned the right to make and

enforce a contract free of race discrimination.  Mitchell v. DCX,

Inc., 274 F. Supp. 2d 33, 44-45 (D.D.C. 2003).  Section 1981 does

not provide redress for either sex or age discrimination.  To the

extent that Marshall intended to plead a § 1981 claim for sex or

age discrimination, those claims will be dismissed as to both GSI

and SGT for failure to state a claim.

---

[10] But see Johnson v. Lewis, Civil Action No. 06-22 (RWR), 2006
WL 2687017, at *3 (D.D.C. Sept. 19, 2006) (stating that a § 1981
plaintiff need not be a person of color).

-17-

SGT challenges all of Marshall's race-based and sex-based claims by contending that Marshall's pleading does not identify any conduct by SGT that could conceivably constitute a violation of the anti-discrimination statutes, whether state or federal. While the bases and limits of Marshall's claims are indeed "difficult to decipher" (SGT's Reply at 10), and she does allege that SGT told her "if it had a job for her it would hire her" (CAC ¶ 39), the gravamen of Marshall's allegations is that SGT was not being candid with Marshall when it told her that her job had been eliminated and that they would hire her if they had a position for her.  (See CAC ¶¶ 34-46.)  Accordingly, SGT's motion to dismiss Marshall's § 1981 claim for race discrimination in making or enforcing a contract will be denied.  For the same reasons, SGT's motion to dismiss Marshall's Title VII claims based on race and sex will be denied.[11]

Marshall's race, sex, and retaliation claims brought under Maryland's anti-discrimination statute are time-barred, however. While Marshall did file her administrative charges alleging race, sex and retaliation within the required 180-day period, Md. Code 49B § 9A(a), she did not file her civil action on these claims before the two-year limitations period expired.  Md. Code 49B § 42(b)(1).  Accordingly, all of Marshall's state claims brought

---

[11]  Marshall does not allege retaliation against SGT.

-18-

against GSI or SGT for race and sex discrimination and retaliation will be dismissed.

IV.  THE STATE COMMON LAW CLAIMS

Marshall alleges intentional infliction of emotional distress as to GSI.  A plaintiff claiming intentional infliction of emotional distress must establish "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." Sturdza v. United Arab Emirates, 281 F.3d 1287, 1305 (D.C. Cir. 2002) (quoting Howard Univ. v. Best, 484 A.2d 958, 985 (D.C. 1984)); see also Arbabi v. Fred Myers, Inc., 205 F. Supp. 2d 462, 465-66 (D. Md. 2002) (citing Harris v. Jones, 380 A.2d 611, 614 (Md. 1977), for the proposition that the a claim for intentional infliction of emotional distress in Maryland consists of four elements: "(1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe").[12]  Under Maryland law, "the tort of intentional infliction of emotional distress is rarely viable."  Arbabi, 205 F. Supp. 2d at 466 (quoting Farasat v. Paulikas, 32 F. Supp. 2d 244, 247 (D. Md.

---

[12]  While the parties did not establish whether the common law of Maryland or the District of Columbia would govern the claims alleged, the differences between them are so slight as to be irrelevant for purposes of this motion to dismiss.

-19-

1997).  The emotional distress element must be pled with
sufficient factual specificity so as to rise to the level of
severe emotional distress.  Manikhi v. Mass. Transit Admin., 758
A.2d 95, 113-15 (Md. 2000) (collecting cases involving failure to
satisfy showing of severe distress).  In the District of
Columbia, employer-employee conflicts rarely, if ever, "rise to
the level of outrageous conduct."  Howard Univ., 484 A.2d at 986.
To be actionable, "conduct must be so outrageous in character,
and so extreme in degree, as to go beyond all possible bounds of
decency."  Id. at 986 (internal quotation marks omitted); see
Kerrigan v. Britches of Georgetowne, Inc., 705 A.2d 624, 628
(D.C. 1997) (citing examples of negative employer conduct that
still was not outrageous enough); Waldon v. Covington, 415 A.2d
1070, 1076 (D.C. 1980) (stating that liability for intentional
infliction of emotional distress does not extend to mere insults,
indignities, threats, annoyances, petty oppressions, or other
trivialities) (quoting Restatement (Second) of Torts § 46, cmt.
d) (quotation marks omitted).  GSI argues that Marshall has not
pled facts sufficient to support her emotional distress claim.

     The sexist insults she alleges and the differential
treatment as a manager she perceived may or may not be actionable
under other theories, but they do not reach the high bar set by
the common law for this tort.  Nor does the complaint state with
factual particularity "[the] intensity or duration of the alleged

-20-

emotional injury" or even refer to any medical treatment.
Manikhi, 758 A.2d at 115.  Because Marshall has not pled facts
sufficient to amount to extreme and outrageous conduct, or to
support a reasonable inference of severe emotional distress,
GSI's motion to dismiss this claim will be granted.

Marshall also alleges negligent supervision and retention as
to GSI.  In either Maryland or the District of Columbia "[a]
common law claim of negligent supervision may be predicated only
on common law causes of action or duties otherwise imposed by the
common law." Griffin v. Acacia Life Ins. Co., 925 A.2d 564, 576
(D.C. 2007); see also Demby v. Preston Trucking, Co., Inc., 961
F. Supp. 873, 881-82 (D. Md. 1997) (stating that a negligent
supervision claim in Maryland may be predicated only on a common
law cause of action).  Because Marshall's surviving causes of
action in this case are created by statute rather than common
law, negligent supervision is not a claim that is available to
her.  Accordingly, this claim will be dismissed.

V.    VENUE

GSI, but not SGT, has challenged venue in this district.
Marshall voluntarily dismissed her Title VII claims against GSI,
and venue for the sole surviving claim against GSI is governed by
28 U.S.C. § 1391(b).[13]  Under § 1391(b), "if all defendants

_____

[13]  Although Marshall did not assert jurisdiction under 28 U.S.C.
§ 1331, jurisdiction is proper under § 1331.

-21-

reside in the same state," venue is proper in any district "where any defendant resides[.]" Id. Here, all defendants "reside" in the District of Columbia, as that term is defined in 28 U.S.C. § 1391(c). Because venue in this district is proper for the § 1981 claim against GSI, GSI's motion to dismiss or transfer for improper venue will be denied.

CONCLUSION AND ORDER

Marshall has pled facts sufficient to state claims against GSI and SGT for race discrimination in violation of 42 U.S.C. § 1981, and against SGT for race and sex discrimination in violation of Title VII, but has failed to state any other claims against GSI and SGT. Accordingly, it is hereby

ORDERED that GSI's motion [39] to dismiss for failure to state a claim with respect to any claims for Fifth and Eighth Amendment violations, for Equal Pay Act violations, for age discrimination under the federal and Maryland statutes, for race and sex discrimination and retaliation under Maryland state statutes, for sex and age discrimination under 42 U.S.C. § 1981, and for the common law torts of intentional infliction of emotional distress and negligent supervision and retention be, and hereby is, GRANTED. Those claims are DISMISSED. It is further

ORDERED that GSI's motion [39] to dismiss or transfer for improper venue be, and hereby is, DENIED. It is further

-22-

ORDERED that SGT's motion [38] to dismiss for failure to state a claim be, and hereby is GRANTED in part and DENIED in part.  It is granted with respect to any claims brought under the Fifth and Eighth Amendments, the federal and Maryland statutes for age discrimination, Maryland statutes for race and sex discrimination, and 42 U.S.C. § 1981 for sex and age discrimination.  It is denied with respect to the race discrimination claim brought under 42 U.S.C. § 1981 and the race and sex discrimination claims brought under Title VII.  It is further

ORDERED that counsel for the plaintiff show cause in writing by March 18, 2008, 2008 why sanctions should not be imposed for violations of Rule 11.

SIGNED this 26th day of February, 2008.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge