IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANDRA MARSHALL )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HONEYWELL TECHNOLOGY )<br>SOLUTIONS INC., ET.AL. )<br>)<br>Defendants. )<br>)<br>) | Case No. 1:05CV02502<br><br>Judge Richard W. Roberts |

### AFFIDAVIT SANDRA MARSHALL

I Sandra Marshall hereby swear and affirm under the penalty of perjury that the statements below are true and correct to the best of my knowledge and belief

1. That I am over 18 years of age and competent to give testimony as to the above facts and circumstances in the above case.

2. That I have no knowledge of the intricate or complex rules, regulations or procedures of the Equal Employment Opportunity Commission (EEOC) or Prince George's County Human Relations Commission (PGCHRC).

3. The highest grade I have completed is high school.

4. That in or about 2001, I filed my first discrimination complaint against my employer L-3 Communications with the Prince George's Human Relations Commission (PGHRC). I learned about the PGCHRC from a radio program or a talk show that was on. I had no knowledge of how to file a discrimination complaint with the agency. I completed whatever forms that were given to me. I was not provided with any written information from the PGCHRC or the EEOC on how the agencies work and their

procedures. When I first used the system, I relied solely on what was told to me by the PGCHRC intake officer and investigators. At the time that I first filed with the PGCHRC/EEOC I was not represented by Counsel nor was I represented by Counsel throughout that process. The investigative process took from 2001 until 2002, but over 12 months. The PGCHRC did find that there was retaliation.

5. After 2002, when my first complaint was concluded, my employer again started to retaliate against me.

6. After I was terminated, retaliated against and denied being hired a position on December 31, 2003, I initially tried to file one charge with all three Defendants, Honeywell, SGT and L-3 Communications, however the PGCHRC intake officer I first interviewed with refused to do that. I was forced to go back to the PGCHRC from December 31, 2003, until approximately February 2, 2004 to get the agency to correct the problem. I dealt with three to four different intake persons when I continued to go back and forward to have the agency institute charges against L-3 and SGT in 2004.

7. Although, I filed three charges with the EEOC during the short period of December 31, 2003 until February 2, 2004, the charges were all related. Originally, I had filed an intake questionnaire that had all three defendants listed on the questionnaire. My experience with the PGCHRC was limited, although from December 2003 until about February 2004 I insisted that the agency accept my charges. From 2003-2005, I still relied on the explanations and statements made by the PGHRC to me.

I handled the administrative process with the PGCHRC. I could not force the PGCHRC to do anything. I had no knowledge about amendments or any of the agencies rules, regulations or procedures. However, I insisted with investigator Steele and others

to include claims that I had included on my Intake Form, this continued for a period of more than a year and a half.

8. Additionally, I did not obtain copies of the three charges on the defendants until it was mailed to me in Virginia, which were lost and/or misplaced during my eviction in 2004.

9. In 2004, Ms. Myles interviewed me after I filed my claims with the PGCHRC but before I received copies of my formal charges. At the time of my interview I did not have copies of my Charges against the defendants as I had not received them in the mail from the PGCHRC. I identified to Ms. Myles all claims I believed I had against the defendants, which included age and equal pay. Ms. Myles interviewed the only two witnesses that were willing and able to come forward to speak to her concerning my claims and my case. At the time, I also furnished to Ms. Myles some of the documents I had that I believed supported my claims. I do not recall discussing with Ms. Myles my problems with the Commission.

10. In 2004 after I lost my job, I was unable to obtain employment. I applied to many places and no one would hire me. I was on unemployment. My husband had become ill and could no longer work after having a stroke. My lack of employment and employability along with my husband's illness caused us to lose our home. I was forced to live with my daughter in Washington, D.C. My husband was forced to move in with his niece in Washington, D.C.

11. In 2004 I was also in a state of depression. I sought and received some counseling to help me. This matter still causes me still great emotional distress. I had lost most of my furnishings, family pictures and mementos, most of my clothing and our

3

vehicle was repossessed. My marriage deteriorated and now my husband and I are permanently separated. In 2004 I was not able to pursue any lawsuit against the defendants due to the tragedies and lack of income in my life.

12. In 2005, I obtained a temporary job in Virginia which lasted only a short period of time. I was later forced to move from this area with my husband in order to get employment. We moved to North Carolina with his relatives. I went to school to be a substitute teacher, looked for work, applied for numerous jobs but was never hired by anyone. In 2005, I communicated with the PGCHRC by phone and email. I was called by the PGCHRC to say that they were going to arbitrate the claims. I was also concerned because I was not being communicated with by the agency as it had done in first case in 2001-2002.

13. I also recall in the summer of 2005 of informing Ms. Myles of my concerns because at one point I was told my case was closed by PGCHRC. Ms. Myles attempted to get information from the agency but was not able to. For much of 2004 and 2005, I was just waiting to get the results of the PGCHRC's investigation. I learned that the PGCHRC had not really done much on my case. After more than 18 months, I learned that that the agency was still investigating the case with little to no results. The agency did not close my case until sometime in July 2006, which at that time it was still investigating the case.

14. Close to November and December of 2005, the PGCHRC was communicating with me about having arbitration. I was repeatedly told that I did not need an attorney and I believed that statement. I was talking with a Kathleen Thornton. She said she was the arbitrator and would be handling the arbitration. In fact she stated that

4

the agency usually does not bring lawyers in the arbitration process, when I told her I needed to speak with my lawyer.

15. In late 2005, I was aware that I needed to file my age claim, which was important to me. I had borrowed money at the last minute to file that claim. I believed then and now that the age claim was viable because I had included it on my intake questionnaire and it was my intent to have it included on my Charges before the PGCHRC. I inadvertently did not have Ms. Myles include the equal pay claim with the age claim.

16. When Ms. Myles realized that the age claim was not on the formal charges she requested that I amend the charges that I had with the PGCHRC and include it as part of my claim with my other three charges. I amended the charges on January 6, 2005, while the PGCHRC was still investigating the case.

I SANDRA MARSHALL HEREBY SWEAR AND AFFIRM UNDER THE PENALTY OF PERJURY THAT THE ABOVE STATEMENTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

*Sandra Marshall* (signature)
SANDRA MARSHALL
03/07/08

5