UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

SANDRA MARSHALL,

    Plaintiff,

v.

HONEYWELL TECHNOLOGY
SYSTEMS, INC., et al.,

    Defendants.

FILED
NOV 10 2014
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Civ. Act. No. 05-cv-02502 (RCL)

## MEMORANDUM OPINION

Plaintiff Sandra Marshall ("Marshall") seeks monetary relief for alleged violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e (2012) and the Civil Rights Act of 1871, 42 U.S.C. §§ 1981, 1985 (2012). Marshall alleges that defendants, Honeywell Technology Systems, Inc., L-3 Communications Government Services Inc.,[1] and SGT Inc. (individually, "Honeywell," "L-3," and "SGT" or collectively "defendants"), wrongfully terminated her employment on the basis of discrimination and retaliation for filing an internal Title VII complaint. In February 2004, Marshall filed a written charge of discrimination with the Prince George's Human Relations Commission and the Equal Employment Opportunity Commission. While the discrimination investigation was ongoing, Marshall filed for Chapter 7 bankruptcy. Marshall failed to report her pending discrimination claims, and later suit against defendants, in her Bankruptcy Petition or the attached Schedules at any point before her bankruptcy was discharged in 2006. Defendants now seek summary judgment on Marshall's claims, arguing that they are precluded by judicial estoppel.

---

[1]     L-3 is the result of a merger with EER Systems Inc. in 2003. This opinion refers to the defendant company as "L-3" throughout.

1

I. **BACKGROUND**

Marshall worked as a NASA contractor for over twenty years under various contract administrators. Honeywell obtained the NASA contract on which Marshall worked in 1999, and Honeywell and L-3 (a subcontractor on Honeywell's contract) became Marshall's employers. Between 1999 and 2003, Marshall alleges that she suffered repeated age, sex, and race discrimination, harassment, and civil rights violations by Honeywell and L-3. In 2003, SGT took over the NASA contract from Honeywell and L-3, but SGT did not rehire Marshall to work under the new contract. Marshall alleges that SGT rehired all of her coworkers, but failed to rehire her due to age, sex, and race discrimination. Marshall's last day of work was December 31, 2003. Marshall filed Charges of Discrimination against defendants with the Prince George's County Human Relations Commission and the Equal Employment Opportunity Commission on December 29, 2003 (SGT) and February 2, 2004 (Honeywell and L-3). Mem. in Supp. of Def.'s Renewed Mot. for Summ. J. ["SGT Mot."], Ex. A, ECF No. 162; Def.'s Mot. for Summ. J. ["Honeywell Mot."], Ex. 1, ECF No. 178; Mem. in Supp. of Renewed Mot. for Summ. J. ["L-3 Mot."], ECF No. 161. On September 23, 2005, while the Charges of Discrimination were pending, Marshall filed for Chapter 7 bankruptcy pro se with the U.S. Bankruptcy Court for the District of Columbia, Case No. 05-1448.

Under penalty of perjury, Marshall filed a Voluntary Petition for Bankruptcy, Statement of Financial Affairs, and Summary of Schedules. Honeywell Mot., Ex. 2–4. In the Statement of Financial Affairs, section 4a, Marshall was required to list all suits and administrative proceedings to which she was a party. Marshall listed three suits, in each of which she was a defendant, but did not list her pending Charges of Discrimination against defendants. *Id.*, Ex. 3. Marshall was required to identify "equitable or future interests" and "other contingent and

unliquidated claims of every nature" in her Summary of Schedules. Marshall also failed to note the three pending Charges of Discrimination against defendants in her Summary of Schedules. *Id.*, Ex. 4. On November 5, 2005, Marshall appeared for the Section 341 hearing with bankruptcy trustee William D. White ("Trustee"). During the hearing, Marshall noted that she had a pending EEOC claim against Honeywell only. *Id.*, Ex. 5. Marshall filed her initial complaint against Honeywell, L-3, and SGT on December 30, 2005. Compl., ECF No. 1. Marshall did not amend her Bankruptcy Petition, Statement of Financial Affairs, or Summary of Schedules to include her pending Charges of Discrimination or the current lawsuit at any time before her bankruptcy was discharged on February 13, 2006 or the bankruptcy was closed as a "no asset case" on June 13, 2006. L-3 Mot., Ex. A, ECF No. 161.

In June and July 2009, each defendant filed an initial Motion to Dismiss and/or a Motion for Summary Judgment. Honeywell Mot. to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 122; SGT Mot. to Dismiss and/or Summ. J., ECF No. 123; L-3 Mot. to Dismiss and/or Mot. for Summ. J. on the Basis of Judicial Estoppel, ECF No. 127. On December 18, 2009, Judge Roberts granted defendants' motions to dismiss without prejudice. The Court found that Marshall lacked standing because she had filed for bankruptcy and the Trustee was the proper party in interest with standing to pursue Marshall's claims against defendants. Mem. Op., ECF No. 141. On February 18, 2010, the Trustee filed a Motion to Reinstate Proceedings against defendants. Mot. to Reinstate Proceedings, ECF No. 148. The Trustee noted that Marshall had moved pro se to reopen her closed bankruptcy case, and the bankruptcy case was reopened on January 22, 2010. *Id.* at 1. This Court granted the Trustee's Motion to Reinstate on June 16, 2010 and ordered that the Trustee be substituted as plaintiff. Order, ECF No. 151.

After attempting to settle the case, the Trustee filed a Notice abandoning the lawsuit on January 5, 2011. Praecipe Regarding Filing of Notice of Abandonment, ECF No. 160. L-3 filed its Motion for Summary Judgment on January 21, 2011, L-3 Mot., ECF No. 161, and SGT filed its Motion on January 26, 2011, SGT Mot., ECF No. 162. On January 31, 2011, Marshall filed a Motion to Intervene requesting that the Court allow her to be substituted as plaintiff. On July 19, 2013, the Court entered an Order holding that the case reverted back to Marshall when the Trustee abandoned the lawsuit. Mem. Op. & Order, ECF No. 173. The Court denied Marshall's Motion to Intervene as moot and ordered Marshall to respond to the L-3 and SGT's Motions for Summary Judgment. *Id.* Marshall filed her Opposition to L-3 and SGT's Motions on September 4, 2013. Mem. in Opp'n to Mot. for Summ. J., ECF No. 177. Honeywell filed its Motion for Summary Judgment on September 11, 2013. Honeywell Mot., ECF No. 178. Marshall filed her Opposition to Honeywell's Motion on October 15, 2013. Mem. in Opp'n to Honeywell Mot., ECF No. 185. SGT and L-3 filed their Replies on October 9, 2013, Reply to Opp'n to Mot. for Summ. J., ECF No. 182; Reply to Opp'n to Mot. for Summ. J., ECF No. 183, and Honeywell filed its Reply on November 8, 2013, Reply to Opp'n to Mot. for Summ. J., ECF No. 189.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Washington Post Co. v. U.S. Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). All justifiable inferences are to be drawn in favor of the nonmoving party, and the moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Anderson,* 477 U.S. at 255; *Celotex,* 477 U.S. at 322.

"A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell,* 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson,* 477 U.S. at 248). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. "The non-moving party's opposition must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial." *MDB Commc'ns, Inc. v. Hartford Cas. Ins. Co.,* 479 F. Supp. 2d 136, 140 (D.D.C. 2007); *see Celotex Corp.,* 477 U.S. at 423. "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50. To defeat summary judgment, a plaintiff must produce more than "a scintilla of evidence to support his claims." *Freedman v. MCI Telecomms. Corp.,* 255 F.3d 840, 845 (D.C. Cir. 2001).

### III. ANALYSIS

Defendants each argue that Marshall's claims should be precluded on the basis of judicial estoppel. Defendants argue that Marshall's failure to disclose her pending discrimination claims in her bankruptcy proceedings created a clear inconsistency, and Marshall unjustly benefited from the omission. Marshall contends that the exclusion was inadvertent due to her pro se status, and that all relevant information about her discrimination claims was provided to her counsel and the Trustee during bankruptcy proceedings. The Court finds that Marshall's failure to disclose her discrimination claims in bankruptcy precludes her from pursuing those claims further.

Judicial estoppel "'is an equitable doctrine invoked by a court at its discretion.'" *New Hampshire v. Maine,* 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs,* 893 F.2d 1033, 1037

5

(9th Cir. 1990)). The Supreme Court has noted that judicial estoppel "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Id.* at 749 (internal quotations omitted). While judicial estoppel was originally "disfavored," *So. Pac. Transp. Co. v. ICC*, 69 F.3d 583, 5941 n.3 (D.C. Cir. 1995), the Circuit has since recognized and applied the doctrine as instructed by the Supreme Court. *Comcast Corp. v. FCC*, 600 F.3d 642 (D.C. Cir. 2010); *Moses v. Howard Univ. Hosp.*, 606 F.3d 789 (D.C. Cir. 2010).

The Circuit has found that judicial estoppel may be invoked "'[w]here a party assumes a certain position in a legal proceeding, . . . succeeds in maintaining that position, . . . [and then,] simply because his interests have changed, assume[s] a contrary position.'" *Moses*, 606 F.3d at 798 (quoting *Maine*, 532 U.S. at 749; *Comcast Corp*, 600 F.3d at 647).[2] There are at least three questions that the Court must answer in deciding whether to apply judicial estoppel. First, is a party's later position clearly inconsistent with its earlier position? Second, has the party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position would create the perception that either the first or the second court was misled? Third, will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party? *Id.* (citing *Maine*, 532 U.S. at 750–51). The Circuit has found that judicial estoppel is appropriate to bar a debtor from pursuing a cause of action in district court when that debtor deliberately fails to disclose the pending suit in bankruptcy. *Id.* Claims of inadvertence or mistake do not excuse the failure to

---

[2] Marshall argues that the *Moses* case is not applicable, even though it is the most recent decision from the D.C. Circuit regarding the application of judicial estoppel to a discrimination case that was not disclosed in bankruptcy. *Moses*, 606 F.3d at 792–93. While there are some factual differences between *Moses* and the present case, *Moses* is still the primary authority in this Circuit. Like the plaintiff in *Moses*, Marshall filed a discrimination claim, later filed for bankruptcy, and disclosed her status as a defendant in several suits during bankruptcy but failed to disclose her pending discrimination claim in until caught out by the opposing party. *Id.* The facts are sufficiently close for *Moses* to be instructive and binding.

disclose pending claims, especially when a plaintiff discloses claims that would reduce the overall value of her assets. *Id.* at 800. The Court, however, may not invoke judicial estoppel "against a party who has engaged in misconduct in a separate proceeding if that proceeding is unrelated to the current proceeding." *Id.* at 799 (internal citations omitted); *see Robinson v. District of Columbia*, No. 13-1297, 2014 WL 317846 (D.D.C. Jan. 29, 2014).

The present facts justify the application of the judicial estoppel doctrine. First, Marshall's bankruptcy filings and her pleadings in the instant discrimination case are "clearly inconsistent." In her bankruptcy proceedings, Marshall was required, under penalty of perjury, to complete several documents about her assets, potential legal claims, and potential claims against her. "A debtor is required to disclose all potential claims in a bankruptcy petition." *Moses*, 606 F.3d at 793 (citing 11 U.S.C. §§ 521(1), 541(a)(1) (2012)). In addition to the duty to disclose the existence of pending lawsuits, a debtor is under a duty "to amend [her] petition if circumstances change during the course of the bankruptcy." *Id.* (internal citations omitted). When an estate is in bankruptcy under Chapter 7, the Trustee, as representative of the estate, "retains sole authority to sue and be sued on its behalf." *Id.* (internal citations omitted); *see* Mem. Op. & Order 2, ECF No. 173. Despite these requirements, Marshall did not disclose her pending Charges of Discrimination or the instant case prior to discharge of her bankruptcy, and she continued to pursue her discrimination claims while in bankruptcy even though she was no longer a proper plaintiff.

Marshall's attempt to rectify this inconsistency by reopening her bankruptcy proceedings and disclosing the present case is unavailing. When Marshall reopened her bankruptcy case, she did not amend Schedule C of her Bankruptcy Petition to notify her bankruptcy creditors whether the newly disclosed asset was exempt. Mot. to Reinstate Proceeding, ECF No. 148 (noting that

7

Marshall did not file an amended Schedule C to declare what assets were exempt). The Trustee noted that, without this information, it was unclear who the real party in interest was and how to proceed. *Id.* at 2. Additionally, allowing Marshall's attempt to right the wrongs in her initial Bankruptcy Petition by reopening the bankruptcy proceedings creates a perverse incentive. As the Circuit found in *Moses*, allowing a debtor to "back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary," suggests that the debtor only considered disclosing potential assets after being caught concealing them. *Moses*, 606 F.3d at 800. "This so-called remedy would only diminish the necessary incentive for the debtor to provide the bankruptcy court with a truthful disclosure of [his] assets." *Id.* (internal citations omitted).

Second, as in the *Moses* opinion, the Bankruptcy Court discharged Marshall from Chapter 7 bankruptcy, and the District Court allowed the present case to continue even during the pendency of Marshall's bankruptcy proceedings. This "leaves little doubt that [Marshall] succeeded in hiding the inconsistency from the courts and 'creat[es] the perception that either the first or the second court was misled.'" *Id.* at 799 (quoting *Maine*, 532 U.S. at 750).

Third, Marshall received an unfair advantage over her creditors from her nondisclosure. If Marshall were to prevail in the instant case, she would be allowed to keep any damages awarded to her, and she would not be required to turn over any of the proceeds to her creditors. Like in *Moses*, Marshall's inconsistent positions adversely affected defendants. Had the Trustee known of this case, and had it been appropriately disclosed in bankruptcy, he might have pursued settlement earlier or relinquished control of the case entirely. *Id.* Either action might have benefitted defendants.

Marshall argues that she did not obtain an unfair advantage because she disclosed the existence of her discrimination claims to the Trustee prior to filing the present suit. Marshall's disclosure to the Trustee did not relieve her of the obligation to provide complete information in her Bankruptcy Petition and to supplement that information. Marshall did not amend or supplement her Bankruptcy Petition to reveal the existence of her discrimination claims until almost four years after the bankruptcy was discharged and closed as a "no asset" case. Her disclosure of an EEOC claim against Honeywell only was not sufficient to correct the misrepresentations in her Bankruptcy Petition. *See Moses*, 606 F.3d at 800; *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1295 (11th Cir. 2003) (applying judicial estoppel in a discrimination suit when plaintiff orally disclosed her discrimination claims to the Trustee but did not disclose the claims in her Bankruptcy Petition); *Rodriguez-Torres v. Gov't Devel. Bank of P.R.*, 750 F. Supp. 2d 407, 417 (D.P.R. 2010) ("Taking the position that verbal disclosure to a trustee is sufficient to apprise a Bankruptcy Court of a debtor's assets, completely overlooks both the importance of the Bankruptcy Code's disclosure requirements and the fact that [plaintiff and her attorney] signed the schedules under penalties of perjury." (internal citations omitted)).

As noted above, Marshall's bankruptcy creditors were disadvantaged by her nondisclosure. Marshall's nondisclosure of her discrimination claims allowed the bankruptcy proceeding to close as a "no asset" case and prevented early discussions of settlement or abandonment by the Trustee. Additionally, the delay in disclosure created a new addition to her list of creditors: her discrimination attorney. By the time she reopened her bankruptcy proceedings, Marshall had incurred approximately $150,000 in attorneys' fees. The addition of the new debt limited the Trustee's ability to negotiate a settlement, and the addition of a new creditor reduced the potential bankruptcy payout to other creditors.

Finally, Marshall's bankruptcy proceedings and the present discrimination case are related.[3] Again, similar to *Moses*, Marshall "represented that [she] had no [legal] claim[s] [before the bankruptcy court] . . . [and] that representation [] prevailed; [she] had obtained a valuable benefit in the discharge of [her] debts, but [n]ow [she] wants to assert the opposite in order to win a second time." *Id.* at 800. Marshall "offended the integrity of the District Court" by presenting herself as a proper party to this Court based on a position that is flatly inconsistent with the position she took in the bankruptcy proceedings. *Id.*

Marshall also argues that her lack of disclosure was an inadvertent mistake for which she should not be penalized. Marshall's mistake as a pro se litigant does not excuse her failure to properly disclose her discrimination claims. As noted in *Moses*, inadvertence or mistake is not enough to ward off the application of judicial estoppel. *Id.* at 800. Marshall clearly understood what she was required to include in her Bankruptcy Petition because she disclosed three claims against her that would lessen the value of her estate. Marshall, however, failed to appropriately disclose the three Charges of Discrimination and the present case. Additionally, this Court has interpreted "inadvertence" narrowly. *Robinson*, 10 F. Supp. 3d at 187. "The failure to comply with the Bankruptcy Code's disclosure duty is 'inadvertent' only when a party either lacks knowledge of the undisclosed claim or has no motive for their concealment." *Id.* (quoting *Barger*, 348 F.3d at 1295). Marshall clearly knew about the existence of her discrimination claims, both prior to filing in this Court and after. Further, Marshall had sufficient motivation to

---

[3] Marshall also states that her bankruptcy proceeding is unrelated to her discrimination claims against Honeywell. Mem. in Opp'n to Honeywell Mot. 18–19, ECF No. 185. *Moses* presents a very low bar for establishing that two proceedings are related. *Moses*, 606 F.3d at 800 (noting that contradiction provides sufficient proof of relation: Moses represented that he had no legal claims before the Bankruptcy Court and sought to assert that he did have a legal claim in District Court). Marshall does not dispute this standard, but notes only that her case differs from *Moses* because she acted pro se and her omissions were inadvertent. These arguments are addressed, *infra*.

conceal the discrimination claims. "Motivation in [bankruptcy] is self-evident because of the potential financial benefit resulting from the nondisclosure." *Id.* (citing *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012)).

## IV.    CONCLUSION

For the foregoing reasons, defendants' Motions for Summary Judgment will be granted. A separate Order accompanies this Memorandum Opinion.

Signed Royce C. Lamberth, United States District Judge, on November 10, 2014.